White vs. Chaffin.

## WHITE VS. CHAFFIN.

1. CONTRACT: *Construction of.*
    A promise to pay for property purchased, "out of the proceeds of the first cotton ginned," is evidence conducing to show the time of payment, but does not prove, or tend to prove, that the seller of the property is to look for his pay, alone to the profits made in ginning that season.
2. INSTRUCTION: *When party not prejudiced by.*
    A party is not prejudiced by the court's refusal of his instruction, if the jury finds as asked by the instruction.
3. MECHANIC'S LIEN: *Machinery.*
    No statute, prior to that of 25th April, 1873, gave any lien for *machinery* placed in a building, or otherwise, on land. That act made important changes and enlargements of the lien law.
4. ————: *Limitation, etc.*
    The account for which the lien is claimed, must be filed within ninety days from the time the machinery is placed upon the premises, to be charged with the lien.

5. ———:. *Construction of Statute.*

It is immaterial whether the building for which the machinery is purchased, is being erected, or already completed, at the time of the purchase—the lien attaches alike in both cases.

6. ———: *Judgment under, who affected by.*

If the owner of the land, at the time the machinery is placed upon it, is not a party to the proceeding for the enforcement of the lien, the judgment against, and sale of the lands, will not effect his title.

7. ———: *From what time it dates.*

When the lien is fixed by filing the account in the clerk's office, it relates to the time when the machinery was placed upon the premises, and is superior to intervening incumbrances or conveyances.

8. ———: *What interest subject to.*

A less interest than the fee, may be subject to the mechanics' lien.

9. ———: *Extent of.*

The mechanics' lien is limited to two acres, and a judgment condemning more than two acres is erroneous.

APPEAL from *Jefferson* Circuit Court.

Hon. J. A. WILLIAMS, Circuit Judge.

*Bell* and *F. J. Wise,* for appellant.

ENGLISH, CH. J.:

On the 26th, April, 1873, Edward H. Chaffin filed a complaint against David C. White, in the Circuit Court of Jefferson County, alleging in substance:

That on the 24th of October, 1875, plaintiff sold and delivered to defendant, at his special instance and request, two fifty-saw gin stands, of the value of $200 each, and one extra idler of the value of $3, (articles and value set forth in bill of particulars filed, etc.) as part of the machinery of the defendant's gin house, on the premises hereinafter mentioned; and by agreement, plaintiff set up in running order said gin stands and idler in said gin house on said land, etc. That plaintiff so set up and put in running order said gin stands and idler according to such agreement on the 28th day of October, 1875, and the same then became a

part and parcel of the machinery, and fixtures in said gin house on said land, and so remained.

That said machinery and fixtures were placed in, and set in running order, in the gin house, on the south-west quarter of the south-west quarter of the north-east quarter of section twenty-one, town four south, range nine west, in Jefferson County, etc., which was the property of defendant at the time of such sale and until and after the filing of the lien hereinafter mentioned.

That on the 22d day of January, 1876, and within ninety days after the performance of said contract, plaintiff duly filed with the clerk of the Circuit Court of the said county, a just and true account of the demand aforesaid due him, with a correct description of the property to be charged with his lien, verified by his affidavit, and had the same entered, on the judgment docket for the purpose of establishing his lien, all as the law requires; a copy made an exhibit, the original remaining on file in the clerk's office, etc.

That by the terms of said contract and sale, said sum of $403 became due and payable on the 1st of November, 1875, but though demanded of defendant, he has not paid the same, or any part thereof.

Prayer for judgment, directing a sale of the interest of defendant in said premises, or such portion as provided by law, with the buildings and appurtenances above described, and that the proceeds of sale be applied to the payment of the costs of the suit, and the plaintiff's claim, etc.

The defendant demurred to the complaint, on the grounds:

*First*—That it did not show that plaintiff filed a just and true account of his demand, with the clerk of the Circuit Court, within the time prescribed by law.

*Second*—That it did not state facts sufficient to constitute a cause of action under the amended mechanic's lien law.

The demurrer was overruled, and the defendant filed an answer in substance as follows:

That he purchased the said two gin stands on the 25th day of October, 1875, on a credit, payable out of the cotton crop that year, and the same were delivered to him on that day.

That said gin stands and idler were not placed and erected in said gin house and saw mill by plaintiff, or any one for him, but on the contrary were delivered to defendant, or his agent, in Pine Bluff, and the said machinery was not placed, set up, and put in running order by the plaintiff, on the 28th day of October, or on any other day.

That defendant is not the owner of the land described in the complaint, but the same was purchased on the 29th day of December, 1875, by Mary P. White, wife of defendant, and Richard S. and Joel B. White, their children, under the age of eighteen years, who then became invested with the title.

That said schedule was not filed in the clerk's office, within the time prescribed by law.

That the purchase and delivery of said machinery, was long after the erection and completion of said gin house, and was a separate and independent contract, on credit payable at no specified time.

On the trial, the plaintiff testified, that he was the builder and manufacturer of what is known as the "Chaffin Gin," and his factory was in the City of Pine Bluff. That he manufactured at the instance and request of defendant, to be placed in his gin house, on the land mentioned in the complaint, two fifty-saw gins, one right and the other left handed, at $4 per saw, and delivered the same to him on the 24th day of October, 1875, in the City of Pine Bluff; also sold the idler mentioned in the account, and delivered it to the defendant about two months prior to the 24th day of October, 1875. That he did not erect and

place the gin stands in position in the gin house of the defend-
ant, but that he had spoken to one Foster to do the work for him,
and he promised to do it. He had never paid Foster anything
for erecting and placing the gin stands in order in the gin house
of defendant, and had never been on the land described in the
complaint himself. That the account sued on was correct.

The son of plaintiff testified, that his father sold the gin stands
at the price mentioned, and delivered them to defendant in Pine
Bluff, but he knew nothing of the arrangement for their erec-
tion in the gin house of defendant, nor did he know who placed
them in order.

Plaintiff read in evidence the account filed in the clerk's office,
which appears to have been filed, and entered on the judgment
docket, 22d January, 1876.

The defendant testified, that he purchased the gin stands and
idler mentioned in the account of plaintiff; that he purchased
the gin stands on the 23d October, 1875, which was Saturday,
for the price mentioned; that he contracted for the gin stands
sometime before, and they were delivered to him on the 23d of
October, 1875; that he purchased the idler for his saw mill,
some two months prior to that time; that he was to pay for the
gin stands out of the proceeds of the first cotton ginned; that
he was unable to do so, on account of attachment suits on his
crops, though the attachment suits did affect the cotton ginned
on said gins, except that he was driven to expense and costs in
defending the suits; that he ginned during the season about two
hundred bales of cotton, on said gins, at about $4 per bale; that
the gin stands were delivered to him in Pine Bluff, on Saturday,
the 23d of October, 1875, without reference to any building in
which they were to be placed; that being a mechanic himself, he
and E. Foster erected and placed the gin stands in position;
that Foster was in his employ at that time, and he paid for the

erection of the gin stands; when he purchased the gin stands, nothing was said about placing them in position; he never heard anything about plaintiff employing Foster to erect the gin stands; Foster was in his employ during that year. The gin stands were not delivered on the 24th, but on the 23d of October, as above stated. He did not own the land, but bought the gin stands on his own account.

E. Foster testified, that he was in Pine Bluff when the cotton gins were delivered to defendant, which was on the 23d of October, 1875; that he was a mechanic, and in the employ of defendant for that year, and paid by him. He assisted the defendant in erecting and placing in position the cotton gins in question. Plaintiff never employed him to erect the gin stands, nor was he ever on the place while witness was there. The gin stands had been placed in position when the plaintiff spoke to him about them, the first and only time, at Potterfield's shop, and then he only inquired if they were in position, and how they worked; he never did say anything to witness about erecting them.

Henderson testified, that he was in the employ of defendant, and drove his wagon when they came for the gin stands; that they were delivered and placed in defendant's wagon on the 23d October, 1875, which was Saturday, at McKenny's shop, in Pine Bluff; that defendant and Foster put them in the gin house, and fixed them up; that plaintiff had nothing to do in putting them up; that witness helped Foster most of the time.

Plaintiff, recalled, testified that he was not certain that the Foster who had testified, was the man he had spoken to about placing the gin stands; that he looked like him.

There is copied in the bill of exceptions, a deed from Wm. P. Grace and wife to Mary P. White, wife of David C. White, Richard S. White and Joe B. White, but by which of the parties it was offered in evidence, or whether it was read in evidence at

all, does not appear from the bill of exceptions. It was, perhaps, offered on the part of the defendant.

The deed bears date December 29th, 1875, and the vendors, in consideration of $1, paid them by Isaac Moone, convey to vendees all their right, title, claim and interest in and to ten acres of land in a square, to be laid off in the southwest corner of the northeast quarter of section twenty-one, town four south, range nine west. The defendant moved the court to give to the jury eight instructions, all of which the court gave, except the fourth, fifth, and senventh, which follow:

"*Fourth*—If the jury believe from the evidence, that the said cotton gins were sold and delivered to the defendant with the understanding, and upon an agreement, that the plaintiff was to look to the profits made in ginning the crop of 1875, for his pay, it was an ordinary sale on credit, and a waiver of his lien, and the jury will find for defendant."

"*Fifth*—If the jury believe from the evidence, that the extra idler was purchased two months prior to the sale and delivery of the cotton gins, it was wrongfully included in the account filed, and no lien attached as to that."

"*Seventh*—If the jury believe from the evidence, that plaintiff sold and delivered to defendant the two gin stands in controversy, and that the sale and delivery was independent of the erection of the building, and had nothing to do with it under the contract, it was a sale beyond the contemplation and meaning of the mechanics' lien law, and as much so as if it had been a coffee mill or sausage grinder, and the jury will find for the defendant as to the lien."

The court gave three instructions, moved by the plaintiff, the defendant objected to the first and third.

The plaintiff's instructions follow:

"*First*—If the jury believe from the evidence, that the defendant purchased the machinery specified in the complaint, from the

plaintiff, and for the price therein stated, and that it was the understanding, that said machinery was to be used in the gin house of which defendant was in possession and proprietor, and that the same, afterwards, became a part of the machinery of such building, and that said machinery has not been paid for, and that the mechanic's lien herein sought to be enforced, was filed in the clerk's office, within ninety days from the time the said machinery was set up in said gin house, if set up by or for the plaintiff, they will find for the plaintiff."

"*Second*—The ninety days mentioned in the law, as the time in which a mechanic's lien shall be filed, in cases of machinery furnished for any building, means ninety days from the time such machinery is set up in such building, or on the land upon which the lien is claimed."

"*Third*—Where a certain number of days is required to intervene between two acts, the day of one of the acts only can be counted."

The jury returned the following verdict:

"We, the jury, find for the plaintiff, with lien on the building and land in complaint for the gin stands, and assess the damages at $400, with interest at the rate of six per cent., from October 24th, 1875, up to this date, and judgment for the idler without any lien, and assess the damages thereupon at $3, with interest at the rate of six per cent., from August 24th, 1875, up to this date."

The defendant moved for a new trial, on the grounds:

*First*—Verdict not sustained by evidence.

*Second*—Contrary to law.

*Third*—The court erred in refusing to permit defendant to give in evidence, a deed for the land described in the complaint.

*Fourth*—In overruling the fourth, fifth and seventh instructions asked for defendant.

*Fifth*—In giving the first and third instructions, moved for plaintiff.

The court overruled the motion, and judgment was entered in accordance with the verdict, condemning the gin stands, gin house, and the land, as described in the complaint, to be sold in satisfaction of so much of the demand as was for the value of the gin stands, interest and costs, etc.

The defendant took a bill of exceptions, and appealed to this court.

I. The court did not err in refusing the *fourth* instruction moved for appellant. There was no evidence that the appellee sold and delivered the cotton gins to appellant, " with the understanding, and upon agreement, that he was to look to the profits made in ginning the crop of 1875, for his pay." The appellant testified, " that he was to pay for the gin stands, out of the proceeds of the first cotton ginned,·but was unable to do so, on account of attachment suits on his crops, etc."

This was evidence conducing to show the time of payment, but it did not prove, or tend to prove, that appellee was to look alone to the profits made in ginning the crop of 1875, for his pay. The suit was not commenced until the 26th of April, 1876, when the usual ginning season for the crop of 1875, was over, and the appellant, by his own admission, failed to pay for the gin stands out of the proceeds of the first cotton ginned, or any other.

II. As the jury found no lien for the item in appellee's account for the idler, appellant was not prejudiced by the refusal of the court to give the *fifth* instruction moved for him.

III. The *seventh* instruction assumes it to be law, that if the sale and delivery of the gin stands were independent of, and had

nothing to do with the erection of the building, appellee was not entitled to a lien, any more than if he had sold appellant a coffee mill or a sausage grinder.

When, or by whom, the gin house in which the gin stands were placed, was erected, does not appear from the evidence. Appellee testified, that he manufactured them at the request of appellant, to be placed in his gin house, on the land described in the complaint, and it seems they were placed in the house soon after their delivery. It may, or may not, have been in process of construction, at the time the appellant contracted for the gin stands.

The mechanic's lien law, as contained in Gould's Digest, ch. 112, gave all artisans, builders, and mechanics who performed work and labor on any building, edifice, or tenement for the owner or proprietor, etc., a lien on such building, edifice or tenement for such work and labor, as well as for all material furnished by them in and about such work and labor, and for money paid for such materials, etc. The lien was also given upon the land on which the building, edifice or tenement was erected, etc. Sec. 1, 19.

No lien was given to a person, other than the artisan, builder, or mechanic, who furnished materials, etc. *Duncan* v. *Bateman,* 23 Ark., 327.

By act of 12th April, 1869, the lien was extended in favor of all persons furnishing materials for any building, edifice or tenement. *Cohen* v. *Hager,* 30 Ark., 28.

But neither the original nor amended statute, gave any lien for machinery placed in a building, or otherwise, on land.

The act of 25th April, 1873, to secure liens to mechanics and others, made important changes and enlargements of the lien law.

Sec. 1, provides: "That every mechanic, builder, artisan, workman, laborer, or other person who shall do or perform any

work or labor upon, or furnish any materials, machinery or fix-
tures for any building, erection, or other improvement upon
land, including contractors, sub-contractors, material furnishers,
mechanics and laborers, under or by virtue of any contract, ex-
press or implied, with the owner or proprietor thereof, or his
agent, trustee, contractor or sub-contractor, upon complying with
the provisions of this act, shall have for his work or labor done,
or materials, machinery or fixtures furnished, a lien upon such
building, erection or improvement, and upon the land belonging
to such owner or proprietor on which the same is situated, to
secure the payment of such work or labor done, or materials,
machinery or fixtures furnished." Gantt's Digest, sec. 4056.

The theory, that the mechanics' lien act is in derogation of the
common law, and should, therefore, be construed strictly against
those seeking to avail themselves of its benefits, is not supported
by the better decisions, which hold that its provisions should be
so interpreted as to secure the classes of persons named in the
act, on their complying substantially and in good faith with its
provisions. *Putnam, et al.* v. *Ross, et al.*, 46 Mo., 337 ; *Oster, et
al.* v. *Rabeneau*, Ib., 595.

It would be a narrow construction of the statute, to hold that
a person who has a building in process of erection, in which he
intends to use machinery, may purchase such machinery on
credit upon faith of a lien upon the building and land on which
it is located, while one who has a house or shed completed, and
ready to receive machinery, cannot make such purchase. The
machinery is often more costly, and enhances the value of the
estate, more than the building or shelter in, or under which it
is placed.

The owner or proprietor of the land, may construct the build-
ing or shelter himself, or employ another to do it, and the man
who furnishes the machinery may have no connection with

the erection of the structure, or he may furnish machinery and it may be placed upon and become attached to the soil, before any shelter is built for it, and why should he not have a lien.

If appellee had furnished appellant with an ordinary sausage grinder or coffee mill, such as are used in families, he would probably have put it in his kitchen, and not in his gin house, but whether put in one or the other, there would be no lien upon the building and land for the price of it, because not machinery within the manifest meaning of the statute.

But, if a man has fitted up a house for grinding sausage meat, or parching and grinding coffee, in large quantities for market, and desires a mill and steam engine for such purpose, there is no good reason why a person who furnishes such machinery should not have a lien under the statute.

Under a similar statute of Missouri, it was held in *Reilly* v. *Hudson, et al.*, 62 Mo., 383, that where a man had furnished and fitted up a cooking range in the basement of a building, so as to make it a fixture, he was entitled to a lien, though the building had been erected four or five years before the range was fitted up in it.

So a boiler in a brew-house, is a fixture, and subject to the mechanic's lien. *Gay* v. *Holdship*, 17 Serg. & R. (Pa.), 413.

So burr-mill stones, like any other machinery. *Wademan* v. *Thorp*, 5 Watts, 115.

So a cotton gin placed by the owner of land in a gin house, and fastened to the floor in any manner, held to be a fixture passing with the land as between vendor and vendee, or mortgagor and mortgagee: Ewell on Fixtures, p. 296, notes and cases cited. *Bond* v. *Cole*, 71 North Carolina R., 97; *Latham* v. *Blakely*, 70 Ib., 368; *McDaniel* v. *Moody*, 3 Stewart (Ala.), 314.

IV. The appellee testified, that he manufactured the gin stands at the request of appellant, and delivered them to him at Pine Bluff, on the 24th of October, 1875.

Appellant testified, that he contracted for them some time before, and they were delivered to him at Pine Bluff, on the 23d of October, and as to the time he is corroborated by the witnesses, Foster and Henderson.

This was a disputed fact to be determined by the jury, on the credibility of the witnesses.

The account was filed in the clerk's office, on the 22d of January, 1876.

Sec. 5, of act of the 25th April, 1873, provides that : " It shall be the duty of every person, except as has been provided for sub-contractors, who wishes to avail himself of this act, to file with the clerk of the Circuit Court of the county in which the building, erection, or other improvement to be charged with the lien is situated, and within ninety days after all the things aforesaid shall have been furnished, or the work or labor done or performed, a just and true account of the demand due or owing to him; after allowing all credits, and containing a correct description of the property to be charged with said lien, verified by the affidavit." Gantt's Digest, sec. 4060.

We think the better rule is, that the account should be filed within ninety days from the time machinery is placed upon the premises to be charged with the lien. *Cohen* v. *Hager*, 30 Ark., 29 ; *Hunter, et al.* v. *Blanchard*, 18 Ib., 322 ; *Simmons, Garth & Co.* v. *Carrier, et al.*, 60 Mo., 581 ; *Fitzpatrick* v. *Thomas*, 61 Ib., 512 ; *Strigelman, et al.* v. *McBride*, 17 Ib., 301.

The first and second instructions given by the court below, at the instance of the appellee, are in harmony with this rule. To the second, appellant did not object.

It was not necessary, however, for the appellee to prove that he fixed the machinery upon the premises, or that he procured Foster to do it, or paid him for it. There was no charge in the account for placing the gin stands, the value of the machines

only was charged.  It was sufficient for the appellee to prove
that he furnished the machines, and that they were placed upon
the premises, and that he filed his account in the clerk's office
within ninety days thereafter.  One man may furnish machinery,
and the others may do the labor of fitting it up upon the pre-
mises.  So one man may furnish the lumber for a house, and
another may construct the house of the materials so furnished.
Each of them contribute to the improvement, and each may
establish a lien upon the premises.

Whether the account was filed in the clerk's office within
ninety days from the time the gin stands were placed upon
the premises, was a question of fact to be determined by the jury
upon the evidence.  The appellee swore that he delivered the
gin stands to appellant at Pine Bluff, on the 24th of October,
1875, and the evidence introduced by appellant, proves that they
were afterwards fitted up upon the premises.  Even if taken to
the premises, and placed in the gin house on that day, though
bad morals to do such labor on Sunday, yet the account having
been filed on the 22d of January, 1876, was filed within ninety
days from the time the machines were placed upon the premises,
omitting the 24th of October, and counting the day of the filing
(Gant's Digest, sec. 5648).  The jury seem to have believed the
statement of the appellee as to the time of the delivery of the
gin stands, for they allowed him interest on the sum charged for
them, in the account from the 24th of October.

The complaint alleged that plaintiff set up and put the gin
stands in running order, on the premises, on the 28th of Octo-
ber.  The answer denied that they were placed, set up, and put
in running order on the premises, by plaintiff, on the 28th of
October, or any other day.  This made an issue, not as to the
time when they were so placed upon the premises, but as to the
person by whom placed, which, as we have above stated, was
not material.

The appellee and two of his witnesses swore, that the gin stands were delivered to him, at Pine Bluff, on the 23d of October, but they did not swear that they were taken to, and placed upon the premises on that day.

V. The rule for the computation of time, as given to the jury by the court on the third instruction moved for appellee, and objected to by appellant, is that prescribed by the statute. Gantt's Digest, sec. 5648.

VI. It is stated in the motion for a new trial, that the court excluded from the jury, a deed offered in evidence by appellant. This, perhaps, refers to the deed from Grace and wife to Mrs. White, and her two sons, which is copied in the bill of exceptions, and which we have above mentioned. The bill of exceptions does not state that it was offered in evidence by appellant, and excluded by the court, which it should have done if appellant wished to reserve any question of law ruled by the court in relation to the admissibility of the deed.

Mrs. White, and her sons, were not made defendants to the suit, nor did they interplead for the property, and if they in fact owned the land at the time the machinery was placed upon it, the judgment or sale of the land under it, will not effect their title. Gantt's Digest, secs. 4063-4-5-8.

But if they had interpleaded for the property, and had read in evidence the deed from Grace and wife to them, it would have availed them nothing, because it bore date on the 29th December, 1875, which was after the machinery furnished by appellee was placed upon the premises; and when his lien was fixed by filing his account in the clerk's office, it related back to the time when the machinery was placed upon the premises, and was superior to intervening incumbrances or conveyances. Ib., secs. 4062-3.

On the trial, appellant stated in general terms, that he did not own the land; but it appears from the evidence, that he had a

gin house and mill on it, and purchased machinery for them. Though he may not have been the owner in fee of the land, yet he may have had an interest in it, which was subject to appellee's lien. *McCullough* v. *Caldwell*, 5 Ark., 238.

VII. The court below erred in condemning the whole tract of ten acres to be sold in satisfaction of the lien debt. The statute limits the extent of the lien to all the right and title of the defendant to the land on which the building, etc., may be erected, as well as to a convenient space around the same, not exceeding two acres clear of the building, etc. Gantt's Digest, sec. 4068.

So much of the judgment as is *in personam* for the whole demand, is affirmed.

So much of the judgment *in rem* as condemns the quantity of land authorized by the statute, is affirmed, but so much as is in excess of the statute limit, is reversed, and the cause remanded with instrutions to the court below to so modify its judgment.