and refer to them for trial and judgment such causes as the Judges may deem proper. Say all causes that may be tried without a jury. Let there be but one such commissioner appointed in a given county, and this only in counties having a population of 30,000 or more; require that such commissioner shall possess all the qualifications of a Judge of a District Court, and that he devote his entire time to the duties of his position, receiving as compensation such salary as will command the services of the ablest legal talent.

In view of the fact that there are very few lawyers elected to either house of the approaching session of the General Assembly, the members of the bar interested will do well to think of these things, and devise means to promote the preparation of the proper bills. If the State Bar Association be in working order, its committee on the revision of the laws, or other proper committee might well be put on active duty. There is no time to be lost.

▸●◂    ——

## HARKINSON v. DRY PLACER AMALGAMATING CO. et al.

*(Supreme Court of Colorado, December Term, 1882—Appeal from the Arapahoe County Court.)*

1. PRACTICE IN SUPREME COURT—REQUIREMENT OF FINDINGS OF FACT BY LOWER COURTS REPEALED—BILL OF EXCEPTIONS. The Code provision requiring the lower Courts, where trial is had to the Court, to set out their findings in writing, to which exceptions might be taken, and error assigned thereon in Supreme Court, is repealed. Upon an assignment of error based upon alleged insufficiency of facts to support the judgment, there can be no review unless the bill of exceptions contains all the evidence upon which the question depended in the Court below.

2. CONTRACT.—PARTICULAR FUND OUT OF WHICH PAYMENT TO BE MADE. Where a party to a contract has looked to the anticipated realization of funds by the projectors of a particular undertaking, and not to the personal liability of the parties with whom he has contracted, his claim is confined to that fund, and he cannot enforce payment from individuals ; and if the project miscarries, and funds are not realized, he has no claim upon anybody for anything. But the intention of the party on the one hand not to hold the other personally liable, and, of the latter, to limit his liability to some contingency, so that a cause of action will not arise until it has happened, should be clearly manifested by the contract, the general rule being, that the law implies a promise to pay for services rendered.

3. SAME—SAME. "Due H. the sum of four hundred and fifty-seven dollars and twenty-five cents, for services rendered to the three D. P. A.

Companies, and to be paid out of the first earnings of the machines of said companies.

(Signed)     E. A. Brooks,
             Isaac Underwood,
             G. W. Reed.

"I hereby approve the above conditions.
(Signed)     C. T. Harkinson."

*Held,* not to confine the obligee to the earnings of the machines for payment, or to so limit the liability of the obligors.

Stone, J.  Suit was brought by Harkinson, the appellee, against appellants, to recover for work and services as engineer, at the agreed wages of $100 per month, and judgment was demanded for $457.25.  The answer, after general denial of the employment and amount claimed due, sets up as a special defense, that "the plaintiff agreed to render work and labor to the defendants as engineer, and to wait and receive his pay for such work and labor from the earnings of the machines of said defendants, and the defendants agreed to pay said plaintiff from the earnings aforesaid the sum of one hundred dollars per month; that said machines are machines for placer workings; that as yet said machines have made no earnings."

Trial was had to the Court, which set forth its findings in writing, as follows:

"*First*—That the plaintiff went to work for the defendants about the 25th of April, 1880, at $100 a month as engineer for the defendants, to set up and operate certain Dry Placer Machines of the defendants, *and was to be paid out of the first earnings of the machines.*  It was not said or understood that the plaintiff was not to get any pay unless the machines earned it.  Neither did the plaintiff have any stock or interest in the defendants' companies, nor any share in their enterprise.  He was an employee simply.

"*Second*—Plaintiff *had a settlement* with the defendants, September 25th, 1880, in which it was found that defendants were indebted to the plaintiff in the sum of $457.25, and that at that time defendants gave to the plaintiff a paper showing the amount due, and containing these words, 'and to be paid out of the first earnings of the machines of said companies.'  (Copy of paper in evidence marked Exhibit 'A' for defendants.)

"*Third*—That this paper was *accepted* by the plaintiff for the purpose of obtaining money upon it, which he thought he could do at the time of accepting it, and upon being told by the defendants that they had no money with which to pay him as he was urging them to do.  And that upon failing to get the money on the paper, the plaintiff returned to the defend-

ants, and in presence of the defendants' agents destroyed the paper.

"*Fourth*—That at the time of entering upon the work by the plaintiff, and at the time he was employed, it was contemplated and supposed by both the parties, plaintiff and defendants, that the machines would at once make earnings, out of which plaintiff would be paid as he did his work.

"*Fifth*—That there is no direct proof that the machines did not make earnings, but the trial proceeded upon the assumption, *assented to by the plaintiff*, that *no earnings* had been made by the machines at the time suit was brought, nor at time of trial.

"*Sixth*—That the suit was commenced on the 28th of September, 1880.

"Upon these facts I find as a matter of law that the defendants were indebted to the plaintiff at the time of bringing this suit in the sum of $457.25, and give judgment accordingly."

The only evidence in the case which is presented in the bill of exceptions, is the paper referred to in the findings of the Court as "Exhibit A," and which is as follows:

"DENVER, Sept. 25, 1880.

"Due C. T. Harkinson the sum of four hundred and fifty-seven dollars and twenty-five cents for services rendered to the three D. P. A. Companies, and to be paid out of the first earnings of the machines of said companies.

E. A. BROOKS.<br>ISAAC UNDERWOOD.<br>J. W. REED.

"I hereby approve of the above conditions.

C. T. HARKINSON."

There was a motion for new trial, to the overruling of which appellants excepted, and assign for error that neither the evidence nor the findings of fact by the Court are sufficient to support the judgment.

By the provisions of Sec. 185 of the Code, as originally adopted, the findings of fact by the Court in certain cases where issues of fact were tried to the Court, were required to be set out in writing, with the conclusions of law separately stated, and exceptions might be taken to alleged defects in the findings; but this section of the Code was repealed in 1879, nearly two years before the trial of this case. The bill of exceptions in this case brings up only the findings of the Court, and the paper referred to as "Exhibit A." Upon an assignment like this,

based upon alleged insufficiency of facts to support the judgment, there can be no review unless the bill contains all the evidence upon which the question depended in the Court below.   Powell App. Proc. Sec. 27, Chap. V.

While, therefore, we cannot review the case upon these special findings, yet we may say, that, upon the evidence, so far as it is presented by the bill of exceptions, we think the judgment of the court below was warranted.

The question itself is one of practical interest, not infrequently arising in business ventures, and since few, if any, authorities directly in point are cited by counsel in the case, we have been at some pains in its investigation.

In the case of *White* v. *Chaffin*, 32 Ark., 59, one of the matters in defense set up and testified to by the appellant was, "that he was to pay for the gin stands out of the proceeds of the first cotton ginned, but was unable to do so on account of attachment suits on his crop," etc.   And upon this the Court say :

"This was evidence conducing to show the time of payment; but it did not prove, or tend to prove, that appellee was to look alone to the profits made in ginning the crop of 1875 for his pay."

In the case of *Williston* v. *Jenkins et al.*, 51 Cal., 554, a ship building company gave a certificate to a workman that a certain sum was due him, and to be paid "when the three-masted schooner, now in course of construction by said association, is sold;" and it was held that this was giving only a reasonable time within which to draw the money from the source named, and thereafter the agreement to pay became absolute.

In *Hicks* v. *Shouse*, 17 B. Monroe, 482, where an obligation was given to pay for a negro purchased, so soon as the promisor should "sell a house and lot in the city of Lexington," this was construed to be an obligation to pay within a reasonable time in which to sell the property mentioned.

In the case of *Nunez* v. *Dautel*, 19 Wall., 560, a due bill was given for a sum, to be paid "as soon as the crop can be sold, or the money raised from any other source;" and the Supreme Court of the United States held, that, upon this agreement, no time having been specified within which the crop should be

sold or the money raised otherwise, the law annexed an incident, that one or the other should be done in a reasonable time, and the sum admitted to be due should be paid accordingly. Payment was not conditional to the extent of depending wholly on the alternatives mentioned.

"It could not have been the intention of the parties, that, if the crop was destroyed, or, from any other cause, could never be sold, and the defendants could not procure the money from any other source, the debt should never be paid. Such a result would be a mockery of justice."

To the same effect are the cases of *Ubsdell* v. *Cunningham*, 22 Mo., 124, and *Dana* v. *Mason*, 4 Vt., 368.

Where a party to a contract has looked to the anticipated realization of funds by projectors of a particular undertaking, and not to the personal liability of the parties with whom he has contracted, his claim is confined to the fund, and he cannot enforce payment from individuals; and if the project miscarries, and funds are not realized, he has no claim upon anybody for anything. (1 Add. on Cont., Sec. 226.) But the intention of the party on the one hand not to hold the other party personally liable, and of the latter, to limit his liability, dependent upon some contingency, so that a cause of action will not arise until the contingency has happened, should be clearly manifested by the contract, for the general rule is, that the law implies a promise from the employer to pay a reasonable compensation (where none is expressed) for services rendered, unless it appears that the services were to be gratuitous, or that the person employed relied for payment upon a particular fund, and not upon the personal responsibility of the employer. *Ibid*, Sec. 846.

In all these cases cited, the principle is the same as that involved in the case before us. Here the agreement did not expressly limit the payment wholly to the contingency of the machines earning enough to pay for the services rendered. In the absence of such express limitation, it is not to be implied that the appellee agreed to look alone to the earnings of the business for his stipulated wages, and that if there were no proceeds from that source, that he should not be entitled to any pay whatever.

There is a possible implication that by this agreement to pay

out of the *first* earnings, the appellee was to be considered a preferred creditor as to time of payment, and that he expected to be paid sooner thereby. At all events, this condition can only be regarded as indicating an expected *time* of payment, but not as *sole condition* of payment; and as a legal consequence of such agreement, the wages would be due absolutely after a reasonable time for fairly testing the use of the machines. What is a reasonable time in all such cases, is a question for the Court. *Nunez v. Dautel, supra; Atwood v. Clark*, 2 Greenleaf, (Me.,) 249.

The judgment of the Court will be affirmed.

*Symes & Foote*, for appellants.

*J. P. Brockway*, for appellee.

COMMON CARRIERS—DISCRIMINATION IN RAILROAD FREIGHT —DAMAGES, HOW COMMUTED. Where at a former term of the Court it was decided that the receiver of a railroad company, by the adoption of a contract with a third party, and settlements with him thereunder, had discriminated against the plaintiffs in the rates charged them for transportation of wheat and grain over the railroad operated by him, contrary to the provisions of the State statute, and that plaintiffs were entitled by law to have their grain transported over said road at rates which would put them on an equal footing with said third party for like transportation, and it was referred to a special master to take an account of the amount of such unfavorable discrimination, and to report the result of such examination: *Held*, that the amount of the fund which, under the contract, could be used to pay such third party's commissions, and all expenses incident to the business and the receiver's freights, is the difference between the prime cost of the wheat shipped and the net proceeds of sales, deducting freights and charges incurred upon other roads, and after the shipment left the receiver's road; and that the amount of discrimination is the difference between such amount, after deducting therefrom expenses, compensations, rent of warehouses, interest, exchange, insurance, and the outlay at way stations made by the receiver to secure the trade, and the amount of the freight charged to