HUGHES ET AL. V. FISHER.

10   383
13a  192
f13a 316

1. A written indorsement upon the back of an order limiting the conditions of the order, and made before its present issue for acceptance, constitutes a part of the order.

2. A conditional acceptance of an order becomes absolute upon the happening of the condition.

3. A. accepted an order drawn by B. for $115, the acceptance being conditional upon the receipt of money by A. coming to B. The proof showed that thereafter A. received $2,000. *Held*, that the acceptance became absolute, there being no proof to show that the sum received was exhausted by orders previously accepted.

4. The promise to pay the debt of another out of moneys when received, belonging to that other, but to be paid the promisor, is not a promise to pay the debt of another within the meaning of the statute of frauds.

5. *Held*, that section 14 of the Civil Code, prior to 1887, related to practice before justices of the peace, and that under said statute it was no misjoinder of parties to include the maker and acceptor of an order as defendants in the same action.

*Error to County Court, Pueblo County.*

THIS action was brought by Fisher Bros. to recover from Hughes Bros. as acceptors, and from H. J. Coy as

drawer thereof, the amount specified in the following instrument:

"$115.09.                    DECEMBER 6, 1882.

" *Messrs. Hughes Brothers:* Pay to the order of Fisher Bros., freight advanced on stone, one hundred and fifteen dollars and nine cents. Charge to account of H. J. Coy.                    No. 46."

On the back of the instrument was indorsed the following words, to wit: "This order to be paid on final settlement of stone-work on city hall, and charge to the account of Hardin & Ramsey."

Hughes Bros. were sureties for Coy, who was a contractor and builder, upon a certain bond given by him in connection with his contract for the erection of the city hall of Pueblo. To protect them, all moneys due him under this contract were to be paid to them, and they were to disburse the same upon his orders. The instrument in question was duly presented to Hughes Bros., and by them verbally accepted, to be paid out of the moneys aforesaid. In the justice's court, on motion, the action was dismissed as to Coy. On appeal the cause was tried to the county court, a jury being waived, and judgment rendered against Hughes Bros. for the full amount named in the instrument. To reverse this judgment the present writ of error was sued out. The remaining facts essential to an understanding of the case sufficiently appear in the opinion.

Section 14 of the code, which receives partial construction, reads as follows: "Persons jointly or severally liable upon the same obligation or instrument, including the parties to bills of exchange and promissory notes, and sureties on the same or separate instruments, may all or any of them be included in the same action, at the option of the plaintiff."

Mr. C. A. LOTT, for appellant.

HELM, J. The writing on which this action was brought, and the written indorsement upon the back thereof, made at the time it was drawn and before its presentation for acceptance, must be construed as constituting in law but a single instrument. 1 Daniel, Neg. Inst. § 79, cases. Thus viewed, it is to be regarded as a conditional order; the condition precedent to payment being the "final settlement of stone-work on city hall." The expression, "and charge to the account of Hardin & Ramsey," does not add to or alter the written condition so far as Fisher Bros. are concerned. As interpreted by the conduct and language of the parties themselves, it is a mere direction to Hughes Bros. for their guidance in keeping the accounts between themselves and Coy. But it is shown by uncontradicted testimony that in March, 1883, the final settlement referred to in the indorsement was made. Hence the instrument then became to all intents and purposes an unconditional order, and was therefore to be treated as such. The acceptance by Hughes Bros. was not in writing, but besides being subject to the written condition mentioned, it was itself conditional in another important particular. By the terms of this acceptance, the order was to be paid out of funds, if sufficient, due or to become due to Coy under his contract with the city; an arrangement having been made by which such moneys were to pass through the hands of Hughes Bros.

It appears that, after the final settlement above mentioned, at which time the order became unconditional, there was still coming to Coy, under the contract, $2,500. It also appears that on April 23, 1883, Hughes Bros. received the sum of $2,000 upon this balance of indebtedness. We think that the contingency of the acceptance is fairly shown to have happened. Having received $2,000 in money belonging to Coy, after the instrument became in effect an unconditional order, it was the duty of Hughes Bros., under their acceptance, to pay this.

order, unless they could give a legal excuse for not doing so. Such, for instance, as that the whole of the $2,000 was required to pay other unconditional orders accepted prior to the time of settlement for stone-work on the city hall. But no such excuse was offered.

In regard to counsel's objection that the acceptance of Hughes Bros., being verbal, is within the statute of frauds, and no liability attaches, we have this to say: The promise implied from the acceptance was not a promise to pay the debt of another, in the sense of the statute. It was a promise to disburse funds of that other upon his order, in a particular way; that is, Hughes Bros. agreed, from funds in their hands, or to come into their hands, belonging to Coy, to pay the debt of Coy, mentioned in the order. As the temporary custodian of his moneys, they agreed to pay to one of his creditors, upon the happening of a certain contingency, a specified portion thereof. The personal liability assumed by them was nothing, provided they acted in good faith with reference to their promise. Relying upon this promise the creditor refrained from otherwise pushing his claim against Coy; he left the order with Hughes Bros., and took no other or further steps in the premises. See *Putney v. Farnham,* 27 Wis. 189.

. The proposition that there was a misjoinder of parties defendant, and therefore the action should have been dismissed, is without merit. Under section 14 of the Civil Code, it was perfectly proper to unite in one suit both the maker and the acceptor of such an instrument as the one before us. We cannot concede the correctness of counsel's assertion that this provision has no application to cases originally brought before justices of the peace. It is true, the code deals mainly with pleadings and practice in courts of record; but it is a mistake to assume that, prior to 1887, it in nowise affected actions before justices of the peace, or practice in justices' courts. *The act, prior to* the year mentioned, related to " civil

actions in the courts of justice" of the state. This language is clearly sufficient to cover legislation pertaining to justices of the peace and their courts. Several provisions — such, for instance, as sections 212 and 441 — expressly deal with this class of courts. A number of other provisions, such as section 14, above mentioned, which do not in words speak of justice courts, are broad and sweeping in their language, and were evidently intended to include proceedings in other tribunals besides courts of record. This objection might, perhaps, be overruled upon other grounds, but we deem the foregoing sufficient.

The assignment of error challenging certain testimony of the witness Byfield, offered to explain the meaning of the written indorsement upon the order, presents no fatal objection. Admitting that the court erred in receiving such testimony, it was error without prejudice. For, ignoring this evidence, and construing the instrument according to its plain and obvious significance, we have arrived at the same conclusion as did the court below. The judgment is affirmed.

*Affirmed.*