MEEK *v.* PARKER.

Opinion delivered January 16, 1897.

63    367
f90   342

MECHANIC'S LIEN — EXTENT OF PROPERTY AFFECTED. — Work done
and materials furnished for the improvement of two separate
tracts of land will not create a lien on both tracts for the aggre-
gate amount thereof, unless the work was done and the materials
furnished under an entire contract.

SAME—FOR WHAT ALLOWED.—A mechanic's lien does not exist for
the price of steel wrenches or rubber belting which are not in any
manner attached to the land, though used in connection with a
saw mill or dry kiln, under Sand. & H. Dig., § 4731, giving a lien to
every person who shall "furnish any materials, machinery or fix-
tures for any building, erection or other improvement upon land"
under a contract with the owner.

SAME—FOR WHAT ALLOWED.—Wheels and boxes designed and built
especially for use in a certain dry kiln, which have no value apart
from such kiln, and without which the kiln could not be used with-
out altering its structure, though running on a tramway and not
actually fastened thereto, are constructively attached to, and a
part of, the building, within the meaning of the mechanic's
lien act.

SAME—LEASEHOLD ESTATE.—One who has furnished materials for
the improvement of land leased for a term of years under a con-
tract with the lessee is entitled to a lien therefor on the leasehold
estate.

SAME—WAIVER.—The right to a lien for materials furnished for the
improvement of land is not lost by the acceptance of a note in
settlement of the account, unless it was accepted in absolute pay-
ment of the debt; nor by a transfer of such note before maturity,
where the payee takes it up at maturity.

Appeal from Bradley Circuit Court.

MARCUS L. HAWKINS, Judge.

STATEMENT BY THE COURT.

This action was brought by Parker & Waters
against the Carpenter Lumber Company. The plain-
tiffs seek to establish a lien upon land of said company

for the value of materials furnished and repairs done for and upon buildings and improvements thereon. The property upon which it is claimed that the lien exists consists of two separate tracts of land, over a mile apart. One tract, of an acre and a half, upon which is located a planer and other improvements, is owned by said lumber company. The company held the other tract, of ten acres, under a lease for a term of years, and had located upon it a saw mill, boiler, engine, dry kiln, etc. The lumber company made no defense, but the appellant, J. R. B. Meek, as trustee for the Merchants & Planters Bank of Warren, Arkansas, was, upon his own motion, made a party defendant, and filed an answer. He claimed title by virtue of a deed of trust executed by said lumber company, conveying the property in question to him, as trustee to secure certain indebtedness due from said company to the bank. He denied that plaintiffs had any lien upon said property, as claimed by them. The trust deed under which Meek claimed the property was executed after the materials had been furnished and repairs done by plaintiffs. The finding and judgment was in favor of plaintiffs.

*Wells & Williamson* for appellant.

Section 4731, Sand. & H. Dig., refers solely to fixtures or improvements upon land—real property. It has no reference to personal property, the lien on which is prescribed by sec. 4766. The entire saw mill outfit was personal property, being located temporarily on land held by lease. 56 Ark. 52. Even conceding the saw mills, engines and boilers to be fixtures, yet the belting, wrenches and dry kiln wheels and boxes are not attached, nor realty nor fixtures, so as to bring them within the act. They are mere tools and implements.

2. There was nothing done at the time the affidavit was made. The note paid the account. 32 Ark. 733; 45 *id.* 313; 46 *id.* 552; 48 *id.* 267.

*Z. T. Wood* for appellee.

The word "improvement" is broad enough to include even wrenches. See 1 Bouvier, p. 613. The dry kiln wheels and boxes were a part of the dry kilns, and the latter could not be operated without them. The note was not accepted as payment, nor was the account merged. 48 Ark. 267. The note not having been paid, the rights of appellees existed as before the indorsement, and their lien related back. 32 Ark. 59; 56 *id.* 640; 52 Ark. 58.

RIDDICK, J. (after stating the facts). The only question here is whether, under the facts proved, the plaintiffs are entitled to a lien. If they have a lien, it is not disputed that it takes precedence of the debt secured by the trust deed. The lien claimed by the plaintiffs was for work and materials furnished for improvements upon two separate tracts of lands. It is not alleged or shown that the materials for the separate improvements were furnished under an entire contract. But the court adjudged that the aggregate amount claimed by plaintiffs was a lien upon both tracts of land, and ordered them sold, with the improvements thereon, to pay said debt. The materials furnished for the improvement of one tract of land did not create a lien upon the other tract, when the same were not furnished under an entire contract. It is obvious therefore that the judgment is, to that extent, erroneous. *[margin: Extent of property affected.]*

Among the materials furnished for which a lien is claimed were two steel wrenches, fifty feet of rubber belting, also certain "dry kiln wheels and boxes." It is contended that these articles were not "materials, machinery or fixtures furnished for any building, erection or other improvement upon land," within the meaning of our statute. The wrenches were not in any way attached to the real estate, nor were they a necessary *[margin: For what materials a lien allowed.]*

part of the machinery thus attached. They were only personal property, having no connection with the real estate, and for the price of which no lien attaches thereto. So far as the evidence goes, the same thing may be said of the rubber belting. It is true, there is an itemized account filed, upon which the price of this belting is charged; but there is nothing in the evidence to show that it was furnished for any "building, erection or other improvement upon land, or that it was attached to the land, building, or machinery in any way." There is therefore no evidence to sustain a lien for the price of the same.

Were plaintiffs entitled to a lien for the value of the "dry kiln wheels and boxes furnished by them?" Our statute provides that every person who shall "furnish any materials, machinery, or fixtures for any building, erection, or other improvement upon land, * * * * under or by virtue of any contract expressed or implied with the owner or proprietor thereof, * * * * shall have for his materials, machinery, or fixtures furnished a lien upon such building, erection, or improvement, and upon the land belonging to such owner or proprietor on which the same is situated, to secure the payment of such materials, machinery, or fixtures furnished." Sand. & H. Dig., § 4731.

This statute was not intended to give a lien upon personal property. To entitle the material man to a lien under this statute, the material or machinery furnished must as a rule be attached to or become a part of the improvement or building upon land, or must be used in making such improvement. But the testimony shows that these dry kiln wheels and boxes were designed and built expressly for use in the dry kiln of the lumber company. This dry kiln was a long shed boarded up on both sides and covered over the

top. It had a wooden tramway running through it from one end to the other, upon which these wheels were fitted and made to run. Each pair of wheels were connected by an iron axle. By placing a load of lumber upon two of these axles, supported by wheels, it could be pushed along the tramway into the dry kiln, and, after the lumber became dried, it could be pushed along the tramway to the end of the kiln, from which point it was hauled away in wagons. This dry kiln was constructed especially for the use of these wheels, and could not be used without them, unless one of the sides of the dry kiln was first removed, or in other words without altering its structure. The testimony does not show that these wheels and axles were of a guage used generally in dry kilns, and such as would have a value apart from this dry kiln; but, on the contrary, it shows that they were designed, made and fitted to the tramway of this particular dry kiln, and that, apart from it, they were of little or no value. It is a disputed question as to whether the rolling stock of a railroad should be considersd appurtenant to the same, and a part of the road. But railroads are generally built of a uniform gauge, so that cars and engines of a road may be used on other roads, and have a value apart from the roads upon which they are used. In addition to this, " it is scarcely reasonable to regard as realty property which is one week in New York and the next in California, which changes its locality by many miles every hour." 3 Wood, Railroads (Minor's Ed.), 1961.

But the use of these wheels and axles was confined to the tramway of this particular dry kiln, and we are of opinion that, although not actually fastened thereto, they were, in law, constructively attached, and a part of the building, within the meaning of the act above

quoted. We hold therefore that the plaintiffs are enti-
tled to a lien for the price thereof upon the building and
land, to the extent of the ownership of the lumber com-
pany. *Central Trust Co.* v. *S. & B. Coal, Iron & Ry.
Co.*, 42 Fed. Rep. 106; *Gray* v. *Holdship*, 17 Am. Dec.
680, and note; *Dimmick* v. *Cook*, 115 Pa. St. 573; *Way-
cross Opera House Co.* v. *Sossman*, 94 Ga. 100. See,
also, argument of Matt Carpenter in note to *Minnesota
Co.* v. *St. Paul Co.*, 2 Wall. 645.

When lien enforced on leasehold estate.

The lumber company held the tract of land, upon
which their saw-mill, boiler, engine, dry house, etc.,
was situated, under a lease for a term of years. It is
contended that the improvements for which the materi-
als were furnished, being placed upon leased land, must
therefore be treated as personal property, and that no
lien attaches to such land for materials furnished for
the making of such improvements. But this contention
cannot be sustained. "The estates of tenants for terms
of years are liable for the improvements made by them
upon the demised premises. The lien extends to their
entire interest under the lease, but does not affect the
reversion of the lessor, unless he, by some act of his
own, has obligated his estate." Phillips, Mechanics'
Liens, sec. 191; *White* v. *Chaffin*, 32 Ark. 59; *McCul-
lough* v. *Caldwell*, 5 *ib.* 238; *Paulsen* v. *Manske*, 9 Am.
State Rep. 532, and note.

Waiver of lien.

The last item upon the account of appellees was
furnished April 2, 1894. The account not being paid on
that day, the appellees accepted the note of the lumber
company payable in thirty days in settlement of said
account. They afterwards transferred this note to J.
M. Bailey, but, the note not being paid at maturity, the
appellees repaid to Bailey the amount of the note, and
he re-assigned it to them. It is contended that this note
was accepted in payment of the account, and that the

lien was thus waived. One of the appellees testified that, the account being due and unpaid, this thirty-day note "was accepted in payment" of the same. But this did not necessarily mean that the note was accepted in absolute payment of the account. "In those states where the common law prevails," says Mr. Phillips, "a note, unless it is taken in payment absolutely, will not discharge a mechanic's lien. It serves but to liquidate the demand, and leaves the party to seek his satisfaction upon the original contract." Phillips, Mech. Liens (3d Ed.), sec. 276. The witnesses did not say that the note was taken in absolute payment of the account, nor is this shown by the circumstances. The court, we think, properly held that the taking of this note was only for the purpose of liquidating the account, and did not affect the lien. The note itself purports to be only a promise to pay, not a payment, and, in the absence of evidence to show that it was taken in absolute payment of the account, it must be treated as only a conditional payment. *Weymouth* v. *Sanborn*, 43 N. H. 171, 80 Am. Dec. 144; *Berry* v. *Griffin*, 10 Md. 27, 69 Am. Dec. 123; *Glenn* v. *Smith*, 20 Am. Dec. 452. Our own decisions are not in conflict with this ruling, but, in our opinion, support it. *Brugman* v. *McGuire*, 32 Ark. 733; *Akin* v. *Peters*, 45 *ib.* 313; *Malpas* v. *Lowenstine*, 46 Ark. 552; *Henry* v. *Conley*, 48 *ib.* 267. Nor did the transfer of the note operate as a waiver of the lien. The only effect of such transfer was to suspend the right to sue until the note was returned to the appellees unpaid. The note was in the possession and control of the appellees at the time the suit was brought, and, before entering judgment, the court should have required the appellees to file said note that the same might be surrendered or cancelled; but, as no complaint was made on this point, we suppose that this was done.

It appears to us that the plaintiff is entitled to a judgment and lien upon the property for some amount,

but the record is not sufficiently full for us to enter a judgment here. For the error in rendering a joint judgment against the two tracts of land, and for the other reasons given, the judgment is reversed for a new trial, in accordance with this opinion.