[No. 5415.]
[No. 3073 C. A.]

ROLLINS v. THE DENVER CLUB.

1.  Contracts—Conditions—Performance—Pleading and Proof.

Before a promise to pay, which is conditioned on the performance of an act or depends on the happening of a contingency, can be enforced, it must be averred and found that the condition has been performed or the contingency has happened. —P. 352.

2. Clubs—Loans by Members to Club—Repayment—Conditions.

An incorporated club organized for social purposes issued a certificate to a member by which it promised to repay at its convenience and pleasure a stated sum advanced by the holder, who agreed, in consideration ·of· advances by other members, that he would' not demand payment until the board of directors in its discretion could prudently pay the same out of "surplus revenues" of the club. Held, that such certificate is not an absolute promise to pay within a reasonable time, but is a contract to pay on the happening of the contingency that the club has a surplus revenue which the board of directors in its discretion may prudently use for paying the certificate; and, before such payment can be enforced, the holder must show that this contingency has happened, or that the nonexistence of such revenue is due to the mismanagement or wrongful conduct of the board.—P. 352.

3. Same—Membership.

A member of an incorporated social club is charged with knowledge of the expenditure of its income and profits and with the management of its affairs by the directors.—P. 353.

4. Corporations—Dividends—Authority of Directors.

Courts of equity are loath to interfere with the discretion which the directors of a private corporation organized for profit have in declaring dividends, and a strong case must be made for their interposition.—P. 354.

5. Clubs—Directors—Mismanagement Charged by Member.

A member of an incorporated social club must make a strong showing of mismanagement of its affairs by the board of directors, of which he had knowledge and made no complaint, before he can be heard to say that such mismanagement has resulted to his injury.—P. 354.

*Appeal from the District Court of the City and County of Denver.*

*Hon. John I. Mullins, Judge.*

Action by E. W. Rollins against The Denver Club, a corporation. From a judgment for defendant, plaintiff appeals.      *Affirmed.*

Messrs. ORAHOOD & HURLBUT, for appellant.

Mr. TYSON S. DINES, Mr. T. H. HARDCASTLE, and Mr. P. H. HOLME, for appellee.

Mr. Justice Campbell delivered the opinion of the court:

The Denver Club was incorporated under the laws of this state, not for pecuniary profit but for social purposes. The sum of $35,000 was subscribed by its members as a building fund. Plaintiff, a member of the club from the beginning, was one of the subscribers to this fund, and to him, as to the others, was issued and delivered a receipt or certificate as follows:

"D. C.                    No. 27.                    $1,000.00

"THE DENVER CLUB

"Building Fund.

"The Denver Club has received from E. W. Rollins the sum of one thousand dollars, on account of the construction of the club house in the city of Denver.

"The above sum is to be repaid at the convenience and pleasure of the club with interest at the rate of 6 per cent. per annum. In consideration of the several subscriptions of other members of the club to the fund of thirty-five thousand dollars, of which this is a part, it is agreed by the holder hereof that no demand will be made for the payment of this obligation, or any part therof, until it can be prudently discharged in the discretion of the board of directors, from the surplus revenue of the club. All dividends upon the principal and payments of interest will be made *pro rata*.

"This certificate is transferable upon the books of the club only in person or by attorney on the surrender of this certificate properly indorsed.

"Witness the corporate seal of said club, and the signature of its president and secretary hereto affixed at Denver, Colo., this 1st day of September, A. D. 1887.

"EDWARD F. BISHOP,
                        "*Secretary;*

"HENRY R. WOLCOTT,
                        "*President.*

"(Seal of the Denver Club.)"

No part of the principal or interest having been received, plaintiff, on June 5th, 1903, demanded payment of the principal and interest without result, and six days later brought this action against the club. After alleging its incorporation, the execution and delivery by it of the certificate, nonpayment and demand, the complaint thus sets out the breach of the contract:

"That the said amount and the interest thereon could have long since been prudently discharged, and that the board of directors of said club, under the exercise of the supposed discretion confided to them by the terms of said instrument, are improperly, wrongfully and illegally refusing to exercise any discretion whatever in an attempt to compel this plaintiff to surrender the said instrument upon the payment of the principal thereof, requiring, as a condition precedent to the payment of any sum whatsoever, the forfeiture of the accrued interest thereon."

· The complaint further alleges that defendant's board has refused to declare any dividends on this series of instruments, although having moneys on hand applicable to that purpose, but on the contrary, from time to time has violated that portion thereof which provides that "all dividends upon the principal and payments of interest will be made *pro rata,*" in that it has heretofore paid several of the instru-

ments of like character without making any *pro rata.* apportionment on account of either the principal or interest hereon to the plaintiff.

In its answer the defendant says that it did not execute, though its officers, without authority, may have executed and delivered this certificate to the plaintiff; admits that neither the principal nor interest thereof has been paid, and denies that it could have been prudently discharged by the exercise of the discretion vested in its board, and denies that it has wrongfully or illegally refused to exercise, or that it has wrongfully or illegally exercised, any discretion given to it by the certificate, or that it ever attempted to compel plaintiff to forfeit any interest thereon. It alleges that during the lifetime of these instruments it has never had any surplus revenue, out of which only, if at all, it was obliged to pay these instruments. It admits that all of them, except that of the plaintiff, have been paid, but without interest; that it offered to treat plaintiff in the matter of payment as it did all other certificate holders, and in order to pay them the club, not having any surplus revenue for such purpose, was obliged to and did borrow the money therefor. This new matter in the answer was denied in the replication.

We have made this summary of the contents of the pleadings to bring out clearly the issues which the parties themselves tender, particularly in view of the fact that plaintiff in argument has attempted to ignore the case which he made in his complaint and to base his recovery upon other grounds.

As preliminary to the main discussion we notice the point made by defendant, to which a large part of the briefs of both parties is devoted, that the contract embodied in this certificate was not made by or under the authority of the club as a corporation, but, at most, is an agreement of its officers. There

is a by-law of the club, of which plaintiff had con-
structive, if not actual, notice, declaring that no debt
beyond the ordinary running expenses of the club
shall be created without a two-thirds vote of the
meeting of the club. It does not appear that such
vote was taken, and there may be a serious doubt if
the contract was ever legally ratified. If it were
necessary to pass upon this point it is not altogether
clear that the defendant could be held; but in dis-
posing of the case upon another ground adverse to
the plaintiff we have assumed, for the purpose of the
present opinion, that the contract was made by the
defendant in its corporate capacity.

The foregoing summary of the pleadings suffi-
ciently discloses that plaintiff's interpretation of the
contract when he drew his complaint was not that
there was an absolute promise by the club to pay a
sum certain within a reasonable time, but that the
promise was to pay the certificate out of the surplus
revenue of the club, when in the discretion of its
board of directors, after the same was on hand, such
payment could prudently be made. In harmony with
such interpretation plaintiff averred that the discre-
tion vested in the board had not been prudently ex-
ercised, since the particular fund out of which the
instrument was to be paid was in the hands of the
club for that purpose and the board wrongfully re-
fused to make the required application. The same
thought was in plaintiff's mind in the production of
his evidence, practically the whole of it being an
attempt to prove that the defendant had accumu-
lated a surplus revenue sufficient to pay the cer-
tificate, or, if it was not on hand, it was because the
board had mismanaged its affairs and wrongfully
exercised or refused rightfully to exercise its dis-
cretion in appropriating the club's income. The
plaintiff's brief, however, is not altogether consist-

ent with his complaint. After having attributed to the contract the meaning which the complaint gives it, plaintiff takes from the written instrument the first two sentences, and, upon the supposition that they constitute the only material part of the contract, says that in law they amount to an absolute, unconditional promise to pay a certain amount within a reasonable time, and that since nearly sixteen years intervened between the delivery of the certificate and the beginning of suit, a reasonable time has elapsed and defendant's liability has become fixed wholly without reference to whether the alleged breach of the contract was established. The authorities which plaintiff cites, like *Jones v. Eisler*, 3 Kan. 134; *Louis v. Tipton*, 10 Ohio St. 88; *id.* 75 Am. Dec. 498; Edwards on Bills of Exchange and Promissory Notes, p. 154; *Works v. Hershey*, 35 Iowa 340; and *Nunez v. Dautel*, 19 Wall. 560, might be pertinent did these two sentences of this certificate constitute the entire contract of the parties; but they are only a part of the contract. The certificate contains an acknowledgment by the club to Rollins that it has received from him the sum of $1,000 to be used in the construction of its club house, which sum, together with interest, it promises to repay at its convenience and pleasure. Upon his part Rollins agreed, in consideration of other subscriptions by other members of the club to this fund, that he will not demand payment, and, therefore, will not sue to recover the sum which he advanced until the board of directors in its discretion can prudently discharge and pay the certificate out of surplus revenues of the club, and whatever payments it does make upon the principal and interest will be *pro rata*. Defendant's promise to pay this certificate is clearly contingent, and the contingency is that the club has a surplus revenue which, considering the object and purposes for which

it was formed, its board of directors in its discretion may prudently use for such purpose. The promise to pay the subscription was not absolutely out of any moneys that the club might have, or out of its assets generally, but the payment was to be made out of a particular fund denominated "surplus revenue"; and, in case of the existence of such a fund, at a time when, considering the purpose for which it was organized, such surplus could prudently be applied to such purpose. The contract is not in this respect different from ordinary contracts where payment is conditioned on the performance of some act or depends upon the happening of some contingency. Before payment in such case can be enforced it must be averred and proved that the condition has been performed or the contingency has happened.— *Harkinson v. Dry Placer Amalgamating Co.,* 6 Colo. 269; *Hughes v. Fisher,* 10 Colo. 383; *Blake v. Coleman,* 22 Wis. 415; *Monro v. King,* 3 Colo. 238; *Jennings v. First Nat'l Bank,* 13 Colo. 417; *Mason et al. v. Graff,* 35 Pa. St. 448; Randolph on Commercial Paper, § 111.

If in this case the club had accumulated surplus revenue which could prudently be applied to the liquidation of these instruments and the board had wrongfully refused to make the application, or if it was shown that its willful mismanagement, amounting in law to fraud or bad faith, or wrongful exercise of discretion, had prevented the accumulation of a surplus, with a view of escaping liability, the law would not permit such conduct to defeat plaintiff's claim. The plaintiff sought by the evidence to show, and upon such showing wholly relied for a recovery, that the defendant did have a surplus revenue out of which payment should have been made; and attempted to show further that if such revenue had not been acquired, it was because the income of the

club in the form of fees and dues, and the profits
from the sale of supplies to its members, from which
such fund might have been accumulated under wise
management, was wrongfully diverted and applied
to expensive and extensive additions and improve-
ments to the club-house, for repairs thereon, for
annual banquets and balls which plaintiff terms lux-
uries, and to the maintenance of a restaurant at a
loss. Plaintiff claims that it was incumbent upon the
managing board to be just before it was generous or
extravagant, and that its first and highest duty was
to provide a surplus fund for the liquidation of these
certificates rather than to apply the income and the
profits, or any part thereof, to uses which ministered
to the convenience or comfort of its members. What-
ever the rule might be if plaintiff was a stranger, we
need not decide. He was a charter member of this
club and has been a member ever since its organiza-
tion. He knows, or is supposed to know, the object
for which the club was formed, and made his sub-
scription with that in view. He knows that the club
was not organized for profit, but for social purposes.
He is charged with knowledge of the expenditure of
its income and profits and with the management of
its affairs by the directors. He never objected or
protested in any way against such management. A
careful reading of the evidence shows that the trial
court was warranted in finding that there never had
been any surplus revenue of the club during the life-
time of these instruments, and that the non-existence
thereof was not due to any mismanagement or
wrongful conduct of the board. On the contrary, for
aught that appears from the evidence to the con-
trary, the management has at all times been prudent
and wise and acceptable to all of the members, in-
cluding plaintiff.

Having failed to establish the essential averments of his complaint, plaintiff ought not to recover. The action was prematurely brought. Plaintiff entirely failed to show any improper exercise by the board of the discretion vested in it. Courts of equity are loath to interfere with the discretion which the directors of a private corporation organized for profit have in declaring dividends, and a strong case must be made for its interposition.—Morawetz on Private Corporations (2d ed.), § 243; *N. Y., etc., R. R. Co. v. Nickals,* 119 U. S. 296; 2 Cook on Corporations (5th ed.), § 545 *et seq.*

If such a rule applies to a private corporation organized for profit, for a stronger reason should a member of a social club be required to make a strong showing of mismanagement of its affairs by the board of directors, of which he had knowledge and made no complaint, before he can be heard to say that such mismanagement has resulted to his injury.

The judgment of the trial court, which was that the plaintiff failed in his proof of the material allegations of his complaint, is sustained by the evidence, and, therefore, is affirmed.        *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE GODDARD concur.