# Moyer *versus* Pennsylvania Slate Company *et al.*
## Keller *versus* Same.
## C. Featherman *versus* Same.
## Becker *et al. versus* Same.
## Young *versus* Same.
## J. H. Featherman *versus* Same.

1. An act incorporating a slate company, provided that the stockholders should be individually liable " for debts, due mechanics, workmen and laborers employed by the company, and for materials furnished ;" this did not include hauling, repairing wagons, lumber for erecting machinery, provender for horses used for the company, powder for blasting, tools, &c.

2. If there be language in an act of incorporation ambiguous or indefinite, it must be interpreted in view of the objects of the law, its purposes and the appropriateness of the language in relation to the supposed object of the legislature.

3. A provision in an act of incorporation inconsistent with the individual irresponsibility of the members is in derogation of the common law, and to be strictly construed.

4. " Materials," refers to that only which forms part of the products of the company.

March 19th 1872. Before THOMPSON, C. J., SHARSWOOD and WILLIAMS, JJ. AGNEW, J., at Nisi Prius.

Writs of error to the Court of Common Pleas of *Northampton county :* January Term 1872.

[Moyer *v.* Pennsylvania Slate Co.]

In the court below a number of suits were brought to August Term 1870 against the Pennsylvania Slate Company, August Wolle and others, stockholders in the company. The suits were under the 7th section of the Act of June 25th 1864, Pamph. L. 947, incorporating The Pennsylvania Slate Company.

The section provides: "That the stockholders of said company shall be jointly and severally liable in their individual capacities for debts due mechanics, workmen and laborers employed by said company, and for materials furnished said company."

The object of the suits was to charge the stockholders individually for debts contracted by the corporation.

The plaintiffs in the several suits and the character of their debts were as follows:—

H. K. Moyer, for hauling slate with his own team from the company's quarries, in Northampton county, to the railroad station.

J. P. Keller, for repairs done at his shop in Monroe county to the wagons used by the slate company in transporting the slate.

Charles Featherman, for lumber furnished in the erection and construction of a derrick, &c., to be used in raising slate from the quarries; also oats, hay and straw for horses and mules of the company.

Becker, Hilliard & Co., for powder and fuse for blasting slate in the quarries, and also for horse-shoes and nails, grease for wagons, files, shovels and other quarrying tools, &c.

John K. Young, for powder and fuse.

Jacob H. Featherman, for hay.

The cases of Moyer and Keller were tried by a jury, January 26th 1872, before Longaker, P. J., who instructed the jury that the debts were not such as under the 7th section of the act of incorporation would create a liability upon individual stockholders, and under the direction of the court the jury found verdicts for the defendants.

In the other actions a case was stated, and judgment was rendered for the defendants on the following opinion of Judge Longaker, which was approved by the Supreme Court, and directed to be reported:—

"The question for decision is, whether or not hay sold by the plaintiff to the defendant corporation to feed the mules, which were used in transporting slate to the railroad depot, is embraced within the legal signification of the phrase, 'materials furnished.' Material, in its ordinary acceptation, is the substance out of which anything is made; and this is the only definition given to the noun by Webster. Material as an adjective has a much larger signification, but it is of its use as a noun that we seek its import.

"The ingredients which form a chemical compound are called chemical materials; the substances which enter into the erection of a building are called building materials; cotton and wool used

[Moyer *v*. Pennsylvania Slate Co.]

by the manufacturer are the materials out of which the cloth is made, and thus the comparison might be pursued throughout every description of manufactures.

"When the stockholders of a manufacturing company are made individually liable for materials furnished their corporation, it is not pretended that the liability is of greater import than to hold them for the substances which are used in that particular line of manufacture. A cotton or woollen manufactory would be held liable for cotton and wool, but certainly not for pig-iron or powder, nor for provender furnished mules in transporting their goods, because none of these substances are used in the manufacture of woollen or cotton goods.

"It is said, if the stockholders are not to be held liable for hay furnished for the mules, it is difficult to know for what materials they are liable. Hay in its ordinary acceptation is not a material but provender, farm produce. If it were the legislative intent to protect the farmer in furnishing food for mules, the word used would have been provender, or farm produce, and not materials. If the intent be to create a liability for wares, goods and commodities, so as to protect the merchant, the word merchandise would be used. In creating the individual liability under the general Manufacturing Act of 27th March 1854, the phraseology is, 'for machinery, provisions, merchandise, country produce and materials furnished.'

"To restrict the legal signification of materials to substances, which are actually used by the defendant corporation in the manufacture of articles, will be to limit it plainly according to the legislative intent; to give it greater scope will afford a greater license of construction than can safely be applied generally to manufacturing companies. It must not be lost sight of that the defendant, amongst other powers, has the right to manufacture slate; one branch of this manufacture may be slate for school purposes, which to be complete for the market, requires frames, and substances thus used will be materials furnished. But as this corporation may be a manufacturer, it is sufficient to know that nothing can be manufactured without material, and therefore the legal signification of the phrase, 'materials furnished,' is to be applied to those substances which are used in the manufacture of the articles produced, and is not to be so enlarged as to embrace everything that may fall within the general definition of matter. Hay is not embraced in the phrase, materials furnished."

The plaintiffs removed the records to the Supreme Court.

The errors were respectively, instructing the jury to find for the defendants and entering judgment for the defendants on the case stated.

*W. S. Kirkpatrick* and *W. W. Schuyler* (with whom were *J.*

[Moyer *v.* Pennsylvania Slate Co.]

*K. Dawes* and *W. Mitchell*), for plaintiffs in error.—One who hauls slate with his own team is a "laborer or workman;" so a wagon-maker is a "mechanic" within the meaning of the act, although he does work for others at his own shop: Seider's Appeal, 10 Wright 57; Penna. Coal Co. *v.* Costello, 9 Casey 241; Savoy *v.* Jones, 2 Rawle 344. "Materials" in the act covers the articles furnished by the plaintiffs, although not actually used: Hinchman *v.* Graham, 2 S. & R. 170; Presbyterian Church *v.* Allison, 10 Barr 413; White *v.* Miller, 6 Harris 52; Odd Fellows Hall *v.* Masser, 12 Id. 508. The statute being remedial, everything was to be done in advancement of the remedy that could be done consistently with any construction that could be put upon it: Weigley *v.* The Coal Oil Co., 5 Phila. R. 67; Dwarris on Statutes 73; Johns *v.* Johns, 3 Dow 15; Gillett *v.* Moody, 3 N. Y. 479; People *v.* Runkel, 9 Johns. R. 147; Dame's Appeal, 12 P. F. Smith 417. All acts of incorporation are to be taken most strongly against the companies: Stormfeltz *v.* The Manor Turnpike Co., 1 Harris 555; Packer *v.* Sunbury & Erie Railroad, 7 Id. 211; Hull *v.* Hull, 2 Strob. Eq. R. 174; Jackson *v.* Collins, 3 Cowen 89; Wilkinson *v.* Leland, 2 Pet. 662; People *v.* Utica Ins. Co., 15 Johns. 358; Mendon *v.* Worcester, 10 Pick. 235; Whitney *v.* Whitney, 14 Mass. 88–92; Holbrook *v.* Holbrook, 1 Pick. 248; 1 Kent's Com. 462. Every interpretation which leads to an absurdity ought to be rejected: Gore *v.* Brasier, 3 Mass. 523; Richards *v.* Dagget, 4 Id. 534; Dwarris on Stat. 132.

*E. J. Fox* (with whom were *O. H. Meyers* and *H. Green*), for defendants in error.—Statutes are to be read according to the natural and most obvious import of the language, without resorting to subtle and forced constructions, for the purpose of either limiting or extending their operations: 1 Kent's Com. 462, 463.

A statute which alters the common law, shall not be strained beyond the words, except in cases of public utility, where the end and design of the act appears to be larger than the words themselves; Vaugh. 179; 6 Jacob's Law Dic. 122.

The opinion of the court in the cases of Moyer and Keller were delivered, May 12th 1872, by

THOMPSON, C. J.—These two actions were by agreement tried together below, and were brought against the above-named corporation and stockholders, under the provisions of the Act of incorporation, approved 25th June 1864. The stockholders' liability clause in the act is as follows: "The stockholders of said company shall be jointly and severally liable in their individual capacity, for debts due mechanics, workmen and laborers, employed by said company, and for materials furnished said company."

The claims embraced by these suits are not of a like nature, but

are within the same governing principle on the question of liability of the stockholders. The first is a claim by the plaintiff for himself and team in hauling slate from the quarry of defendant, to a railroad station for shipment. The second was for repairing wagons at plaintiff's shop in an adjoining county, some five miles distant from defendants' quarry. It was assumed by the plaintiff, that these claims were good against the stockholders jointly and severally, under the provisions of the Act of Assembly referred to. The court below thought they were not.

Corporations are just what the law of their organization makes them—no more, no less; and when there is anything in the law calling for interpretation on account of ambiguous or indefinite language, we must explain the meaning in view of the objects of the enactment—its purposes—and consider the appropriateness of the language used to the supposed purpose in view by the legislature.

By the common law, the individuality of the members of a corporation was merged in the associated body, so far as liability for debts was concerned. The artificial body represented them in that. Whenever, therefore, there is a change in this particular in the act of incorporation, it is consequently just so far in derogation of the common law, and is to be strictly construed; McMullin v. McCreary, 4 P. F. Smith 230 ; that is to say, it is not to be extended by implication. Many authorities go to prove this which need not be cited. It is not to be forgotten, however, that this, as a rule, has no place where the intent is manifest from the words of the law.

The common law was certainly changed in regard to the liability of the stockholders of this company, so far as it renders them liable in their private capacity, for "debts due to mechanics, workmen, and laborers, employed by said company." It has been contended by the able counsel for the plaintiff in error, that these words are broad enough to cover any claim of any mechanic for work done for the company at his shop anywhere, without regard to any connection as a mechanic of the company, and so of any laborer anywhere, whose services the company may have temporarily availed themselves of.

Undoubtedly the corporation itself is liable for all manner of claims against it, arising out of its business, whether for money borrowed, territory acquired, teams bought, merchandise, provisions or produce obtained, or professional services ; in short, for whatever may be deemed necessary to the life and prosperity of its business. This is an incident of its artificial existence, as fully recognised in law, as it is of natural persons. Employees of every description have the responsibility of the corporation to look to for payment.

Now it is plain, that when the liability to a limited extent was

[Moyer *v.* Pennsylvania Slate Co.]

cast upon the stockholders personally, it was with a view to an additional security to the operatives of the establishment, who were the producers—the life of it. It is generally only to such that liens are extended in the mining districts. For them the law provides additional security; so in this case, the additional security of the individual responsibility of the stockholders is added to that of the corporation, in favor of the employees of the corporation, "its mechanics, workmen and laborers."

If this be not the meaning of the words "employed by the company," we see no possible use of the enumeration of the grounds of liability of the stockholders. Were it intended to hold them liable generally, enumeration, it is reasonable to suppose, would have been omitted. If the words in themselves were general enough to seem to bear the construction contended for, we are admonished by these considerations that they were not so intended. Generality of expression in Acts of Assembly, as in contracts, is often restricted by regard to the subject-matter to which it has been used: Commonwealth *v.* The Councils of the Borough of Montrose, 2 P. F. Smith 391.

The learned judge of the Common Pleas was right therefore, we think, in holding as he did, that the charge for hauling slate, the party using his own team and contributing his own time, was not embraced by the liability clause quoted. Indeed, I regard it as not within the words at all. The teamster was not strictly either a laborer or workman, but the ruling stands well enough on the general ground suggested. His was labor of the same kind as that performed by the railroad company in transporting the slates to market, and the yardmen who took charge of them on their arrival at their destination. These parties were independent of the corporation altogether, and cannot be regarded as employees at all. All this is true of the wagon-maker's bill. He was not the mechanic of the corporation. His was an independent business under his own control and option, and he was no more entitled to avail himself of the stockholders' liability, than the horse-shoer, or the ordinary shoemaker, who might furnish shoes worn by the workmen and laborers. And so of materials furnished. That of course has reference only to such as form part or portions of the products of the establishment. Without injustice to the stockholders, we cannot hold to the general liability clause against them, and yet it is to be regretted, if loss ensue to individuals, because the corporation may be unable to pay them their dues. This, however, is the fault of the legislation on the subject. For the reasons given these judgments must be affirmed.

WILLIAMS, J.—I concur in the construction given to the act in these cases, except so far as the opinion decides that lumber furnished for the erection and construction of a derrick used in hoist-

[Moyer v. Pennsylvania Slate Co.]

ing slate from the quarry, and powder and fuse used in blasting the slate, are not "materials," within the meaning of the act for which the stockholders are individually liable.

In the other cases judgment was entered November 12th 1872.

PER CURIAM.—Our views of the liability of stockholders in this corporation have been pretty fully explained in the case of Moyer v. The Pennsylvania Slate Company et al., besides which, and the opinion of the learned judge below in the case stated, embracing all the foregoing suits, nothing further is needed to show that the judgments entered therein must be

Affirmed.