James Talcott, Inc. *v.* Levy, Appellant, et al.

Argued March 5, 1936.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, PARKER, JAMES and RHODES, JJ.

*R. L. Levy*, with him *J. Julius Levy*, for appellant.

*W. A. Bissell*, with him *Welles, Mumford, Stark &
McGrath*, for appellee.

OPINION BY CUNNINGHAM, J., July 10, 1936:

The suit in this case was upon a commercial
guaranty signed by defendants Greenwald and Levy.
Judgment was entered against Greenwald for want of
an affidavit of defense. Levy filed an original individual
affidavit of defense and two supplemental affidavits
which were held insufficient by the court below upon a
rule for judgment. From the judgment entered for the
amount of the claim, Levy has appealed.

The statement of claim sets forth the following cause of action: Plaintiff acts as a factor and commission merchant for various concerns in the merchandise business. Scranton Knitting Mills, Inc. is a corporation engaged in the business of manufacturing sweaters and similar goods, Greenwald being its president and Levy its treasurer. In June, 1934, they executed, as individuals and as an inducement for the sale and delivery of goods to their corporation, a guaranty whereby they agreed to be liable to plaintiff for the payment of any obligations on the part of Scranton Knitting Mills.

One paragraph of the agreement provided: "This is a continuing agreement, and shall apply to all transactions entered into by Talcott prior to actual receipt by Talcott of written notice from the undersigned cancelling this undertaking and such cancellation shall be applicable only to transactions thereafter occurring."

In reliance upon this agreement, plaintiff approved the sale and procured the delivery to Scranton Knitting Mills of certain goods ordered from the Steuben Knitting Company, Inc., in the quantities and at the times set forth in an exhibit to the statement of claim, the price of these goods being $1,443.26. This account was assigned to the plaintiff, Scranton Knitting Mills not having paid the same but having gone into bankruptcy subsequent to the receipt of the goods. The suit was instituted against the individual guarantors.

The affidavits of defense set up three separate defenses: (a) That appellant did not personally execute the guaranty, but signed it "Jacob Levy, Treasurer"; (b) That the guaranty was cancelled prior to the making of the contract for the particular goods involved in the controversy; and (c) That in any event the amount of the indebtedness was not $1,443.26, as set forth in the statement of claim, but only $730.76.

The allegation that Levy signed the guaranty not as an individual but as treasurer of his corporation, was

correctly held insufficient by the court below, on the ground that the term "treasurer" is merely descriptive. This point was not pressed upon appeal and may be disregarded. We are therefore called upon to decide whether the affidavits of defense sufficiently plead the cancellation of the guaranty; and if not, whether appellant is nevertheless entitled to go to trial upon the amount recoverable.

1. Cancellation is predicated upon these three letters attached as exhibits to the supplemental affidavits of defense:

"August 3, 1934.

James Talcott, Inc.,
225 Fourth Ave.,
New York City, N. Y.
Gentlemen:

According to our records we do not owe you anything at the present time.

Will you kindly return our guarantee as we feel we are entitled to a line of credit as you are now familiar with the way we do business, in case we happen to buy something from someone for whom you factor.

Yours very truly,

MLG/fk.　　　　Scranton Knitting Mills, Inc."

"James Talcott, Inc.
225 Fourth Avenue,
New York.

August 10th, 1934.

In replying please refer to J. H. Bartel.
Scranton Knitting Mills,
307 Penn Ave.,
Scranton, Pa.
Gentlemen:

We have your letter of August 3rd, asking us to return your guarantee, but believe that you are a little bit too hasty.

We just received an order from Greenhill & Daniel, Inc., for whom we factor, amounting to over $1400.00, so we are disregarding your request. We further feel that it is ridiculous to send it back even if the above bill is paid, because you may be buying from other mills we factor for.

We will be unable to extend a line of credit without this guarantee unless you issue a completely certified statement.

Very truly yours,
James Talcott, Inc.,

JHB :EE-Enc.          J. H. Bartel."

---

"August 13, 1934.

James Talcott, Inc.,
225 Fourth Ave.,
New York City, N. Y.
Attention: Mr. J. H. Bartel.
Gentlemen:

In reply to your letter of the 10th, please do not ship any merchandise on our personal guarantee, hereafter.

In regard to the financial statement the only statement we can give you is as of 2/7/34, as we have not taken any inventory since. However, we are pleased to enclose a copy of our last trial balance, which we trust will be of use to you.

Thanking you for past favors, we remain,

Yours very truly,
Scranton Knitting Mills, Inc.

MLG/fk-Encl.          By M. L. Greenwald."

Do these letters, taken singly or together, constitute a cancellation of the guaranty within the meaning of the agreement? It is clear that, whatever may be the corresponding averment in the affidavits of defense, the letter of August 3rd does not amount to such a cancellation. Even if we ignore the source from which it came, it did not give a definite notice of cancellation.

On the contrary, by its terms it was nothing more than a request for the return of the agreement. To paraphrase its terms, it asks whether plaintiff will not in the future be willing to deliver goods without the benefit of the guaranty. Such a request does not amount to a cancellation. This is made even more apparent by the two succeeding letters. In plaintiff's letter of August 10th there is contained a definite refusal to extend credit without the guaranty, unless Knitting Mills submitted a completely certified statement. The final letter of August 13th shows that no cancellation was previously intended, because it contains the words, "In reply to your letter of the 10th, please do not ship any merchandise on our personal guarantee, hereafter."

In our opinion, this last communication, apart from its terms, does not constitute a cancellation by appellant Levy, because it does not come or purport to come from him. The letter is signed "Scranton Knitting Mills, Inc., by M. L. Greenwald," and it is apparent from the stenographic notation that it was dictated by Greenwald. Strictly construed, the letter does not constitute a notice by Greenwald individually, but only in his capacity as an officer of the Knitting Mills. Even if the form of the signature be disregarded and it be treated as an individual communication from Greenwald, still the letter refers to that guarantor alone, and not to appellant. The agreement distinctly provides that it shall apply to all transactions prior to actual receipt by plaintiff *of written notice from the undersigned cancelling this undertaking.*" The notice, even if it be construed as a cancellation, does not come from appellant, nor does it purport to be written on his behalf.

It is true that the second supplemental affidavit of defense avers that appellant authorized Greenwald to give notice on his behalf to plaintiff that they were unwilling to guarantee any further shipments of merchandise; and that the letters of August 3rd and 13th were

duly prepared by Greenwald pursuant to such instructions. This allegation, however, even if established, is not sufficient to relieve appellant of his obligation. The question is not what was communicated by appellant to Greenwald, but what was communicated by Greenwald and Levy to plaintiff. If Greenwald failed to follow instructions, that is a matter between him and his co-guarantor. Under the contract of guaranty plaintiff was entitled to rely upon the guarantee of appellant until it received notice from him fairly indicating that he no longer intended to be bound by his contract; and no such notice was conveyed by the letter in question.

2. The remaining question relates to the extent of appellant's liability. Neither of the first two affidavits of defense contained any denial that the sum of $1,443.26 was due and owing by Scranton Knitting Mills to plaintiff. Under the Practice Act, this fact was therefore admitted. Appellant, however, relies for his defense upon the seventh paragraph of the last affidavit. This paragraph reads as follows:

"Seventh. Deponent further avers that the Scranton Knitting Mills at the time of bringing this suit was not indebted to James Talcott, Inc., plaintiff, in the sum of $1443.26 as set forth in the statement of claim, but that the amount of the indebtedness on said date was $730.76. Deponent avers that he has no personal knowledge as to the exact amount of merchandise shipped by the Steuben Knitting Mills to the Scranton Knitting Mills, nor as to the credits to which the Scranton Knitting Mills is entitled and has no means of obtaining the said information; that the facts are all within the possession of the plaintiff herein. Deponent makes this averment, however, and bases his allegations upon the fact that the plaintiff rendered an account to him under date of the 7th day of November, 1934, wherein they claimed of the Scranton Knitting

Mills on said date the sum of $730.76, a copy of the account rendered to deponent by the plaintiff on said date being attached hereto and marked 'defendant's Exhibit D'."

If the rules of pleading be strictly applied, this averment would not be sufficient to prevent judgment, in view of the earlier admissions. Appellant did not ask leave of court to file an amended affidavit of defense, stating his reasons for failing to raise this defense previously. On the contrary, he filed a supplemental affidavit of defense. Such an affidavit is not to be treated as the sole defense, but is to be construed together with such other affidavits as have been filed. Particularly is this so where no excuse is given for the failure to plead properly in the first instance. In *Woodoleum Flooring Co. v. Kayser,* 45 Pa. Superior Ct. 372, it was said at page 374: "When two affidavits are filed in a case, the effect to be given to the second or supplemental one is to be determined by the rule announced by this court in *Penrose v. Caldwell,* 29 Pa. Superior Ct. 550. They are to be construed as one affidavit, and must not be self-contradictory. If the supplemental affidavit contradicts the averments of the original in matter essential to a valid defense, the court is warranted in holding that they are insufficient to prevent a judgment, but, where it is simply fuller and more specific than the original and the facts are not irreconcilable with the facts expressly averred in the original, or with the necessary inferences to be drawn therefrom the two affidavits are to be treated as one and measured by the well established tests." See also *Elzea v. Brown,* 59 Pa. Superior Ct. 403.

Even if the quoted paragraph is allowed to stand on its own feet, however, it is not a sufficient denial of the averments of the statement of claim. Appellant says in effect that he has no personal knowledge of the exact amount of merchandise shipped, and has no means of

obtaining that information; and that the facts are all within the possession of the plaintiff. He states that he bases his denial upon an account rendered on November 7, 1934. These averments do not comply with the provisions of the Practice Act. The proper form of denials is set forth in Section 8 of that Act, as amended by the Act of June 12, 1931, P. L. 557, and the Act of July 12, 1935, P. L. 666. Appellant has not brought himself within any of the categories prescribed by that section. If he bases his denial solely on the ground that he has no knowledge of the facts, then the statute, as amended, requires him further to aver both that fact and also the further fact that after reasonable investigation he is unable to ascertain whether or not the facts averred by the plaintiff are true. He has made no such averment. This is a reasonable requirement under the circumstances, and there is no reason why he should be allowed to disregard it.

If the statement that "the facts are all within the possession of the plaintiff" is meant to be the equivalent of an allegation that "means of proof of the facts alleged are under the exclusive control" of the plaintiff (an alternative form of denial), even so it is not sufficient. Appellant cannot claim the protection of such a form of denial where upon the face of the pleadings it cannot be the truth. In *Bank of America National Trust & Savings Assn. v. Sunseri et al.*, 311 Pa. 114, 118, 166 A. 573, the Supreme Court stated: "It may be laid down as a rule for the interpretation of this part of the statute, that the courts will not give force or effect to averments in an affidavit of defense that the means of proof of particular 'facts alleged [in the statement of claim] are under the exclusive control of the party making the allegation,' if such averments cannot, in the nature of the case, be true; and, if there can be any doubt on the subject, the affidavit of defense must set forth sufficient facts to show that those averments may be true."

Even if such a rule were not mandatory upon us, we would be obliged to adopt it in this case, which confirms its soundness. Appellant admittedly was the treasurer of Scranton Knitting Mills; he was not a stranger to its transactions. Indeed, one of his original defenses was that the guaranty was executed by him, not as an individual but as an officer of that company. Under such circumstances, he cannot be heard to say that he had no knowledge of the amount of merchandise shipped to his company or of the prices charged therefor. In fact, his defense is predicated, in part, upon an account alleged to have been received by the Knitting Mills from plaintiff. The facts were therefore available to him if he cared to examine them; and it is idle to say that a verbal formula should be permitted to control the actual factual situation.

The one averment of fact in the paragraph quoted is that referring to the statement of accounts submitted on November 7, 1934, and showing the sum of $730.76 then owing. This also is insufficient to prevent judgment, because it is inconclusive upon the face of the record. Appellant has not included in the printed record a copy of the exhibits attached to the statement of claim. An examination of the original papers, however, shows that the plaintiff attached as exhibits prices and descriptions of specific orders from Steuben Knitting Company totalling the sum claimed, as well as a copy of plaintiff's books of account listing the identical items. The affidavit of defense contains no specific averment of admission or denial as to any one of these items; nor does it state that the account rendered on November 7, 1934, was the last account received by Scranton Knitting Mills. Indeed, one item listed in plaintiff's exhibits does not appear at all in this account. It is therefore obvious that it has no value in itself as a final statement of the debits and credits between the parties; and in view of the fact that there is no specific

denial of the various sums alleged to be due they should be treated as admitted. None of the assignments of error can be sustained.

Judgment affirmed.