Pennsylvania Turnpike Commission, to use, v.
Girard Construction Co., Inc., et al.

*Wolf, Block, Schorr & Solis-Cohen,* for plaintiff.

*H. N. Silver,* for defendant.

*W. H. Myers, Jr.,* for surety.

SMITH, P. J., February 24, 1940.—This matter comes before us on a rule for judgment for want of a sufficient affidavit of defense filed by the use-plaintiff against the Fidelity & Deposit Company, surety on the bond of the contractor. The Girard Construction Company, Inc., on December 21, 1938, contracted with the Pennsylvania Turnpike Commission to complete a section of highway according to plans and specifications for the sum of $444,758.98. On the same day the Fidelity & Deposit Company, a corporation of the State of Maryland and engaged in the business of furnishing surety bonds in consideration of a premium paid it, executed and delivered its bond to the Pennsylvania Turnpike Commission in the sum of $444,758.98, conditioned that the Girard Construction Company, Inc., should, inter alia, satisfy all claims and demands incurred in and for the same in the performance of said contract. Contemporaneously with the giving of this bond, the said Fidelity & Deposit Company, in consideration of a premium paid, executed and delivered to the Pennsylvania Turnpike Commission another bond in the sum of $222,379.49 con-

ditioned, inter alia, for the payment of all persons who performed labor, rendered service, and furnished materials *in the prosecution of the work provided for in said contract.* The conditions and limitations of said bond, inter alia, are that "all persons who have performed labor, rendered services, or furnished materials or machinery as aforesaid shall have a direct right of action against the principal and surety on this bond, which right of action shall be asserted in proceedings instituted in the State in which such labor was performed, services rendered, or materials furnished. . . ." In said bond, paragraph D is as follows:

"As used herein, the term 'person' refers to any person, firm or corporation who has furnished materials or machinery to be used on or incorporated in the work, or the prosecution thereof provided for in said contract," etc.

On various dates between December 28, 1938, and August 31, 1939, the Girard Construction Company, Inc., agreed to buy, and J. Jacob Shannon & Company, the use-plaintiff, agreed to sell and deliver to it merchandise at the times, in the amounts and at the prices fully appearing in the book of original entries of the use-plaintiff and set forth as exhibit "C" in the statement of claim. The said merchandise for the charges as made therein was sold and delivered at the special instance and request of the Girard Construction Company, Inc., according to the averment in the statement of claim. The statement of claim also avers that the charges were just and reasonable and that the Girard Construction Company agreed to pay the same.

The statement of claim avers in paragraph 11 that the merchandise consisted of materials which were indispensable to the performance of the work covered by said contract; that all said materials were intended to be used and were used exclusively for and were consumed in the prosecution of said work.

The statement of claim avers in paragraph 14 that, in addition to the said materials sold and delivered to the Girard Construction Company, the use-plaintiff entered into five written contracts, set forth in the statement of claim as exhibits, with the Girard Construction Company to rent and deliver to it certain machinery at rentals which were just and reasonable and averred that said machinery as rented remained in the possession of and was used by the Girard Construction Company exclusively on and for the prosecution of the work provided for in said contract and that said machinery was indispensable for the performance of said work.

The balance claimed to be due by the use-plaintiff on materials furnished is in the sum of $4,515.44 and the balance claimed to be due on said rentals of machinery is $7,892.27. Demand has been made for the payment of said sums but defendants have neglected and refused to pay the same or any part thereof.

The statement of claim further avers that on July 25, 1939, the Fidelity & Deposit Company took over said contract and through its agents completed the same, purchasing from the use-plaintiff certain materials in the sum of $421.42 and renting from it certain machinery for the sum of $1,783.36, or an aggregate sum of $2,204.78. There is, however, a specific denial of this averment. The affidavit of defense states that the surety company did not take over the contract of the Girard Construction Company and did not use any of the materials or machinery which were sold to or rented by the Girard Construction Company. For the purpose of this opinion, therefore, this particular averment may be omitted from our consideration.

The affidavit of defense admits that the charges as set forth in the statement of claim are reasonable. It states that it has no knowledge as to whether the merchandise was delivered to the Girard Construction Company and further states that it "after reasonable investigation, is

unable to ascertain whether or not the facts alleged in the statement of claim are true" and demands proof thereof.

As to the articles rented to said Girard Construction Company, the affidavit of defense states that it is denied that the equipment covered by said agreement is designated machinery or was machinery or is otherwise within the terms and conditions of either of said bonds set forth as exhibits "A" or "B" as attached to the statement of claim or that it was used exclusively in the prosecution of said work; that it has no knowledge of the facts as set forth in the statement of claim as to the said rentals and, after reasonable investigation, is unable to ascertain whether the facts set forth in said statement of claim are true, and demands proof thereof.

It is upon this affidavit of defense as filed that the use-plaintiff has taken its rule for judgment.

It is the contention of the use-plaintiff that the affidavit of defense is insufficient.

Defendants rely on the provisions of the Practice Act of May 14, 1915, P. L. 483, sec. 8, as amended by the Act of July 12, 1935, P. L. 666, which reads as follows:

"It shall not be sufficient for a defendant in his affidavit of defense to deny generally the allegations of the statement of claim, or for a plaintiff in his reply to deny generally the allegation of a set-off, counter-claim, or new matter; but each party shall answer specifically each allegation of fact of which he does not admit the truth, except as provided in sections seven and thirteen: Provided, however, That if either the defendant or the plaintiff has no knowledge, and after reasonable investigation is unable to ascertain, whether or not the facts alleged by the opposite party are true, or if means of proof of the facts alleged are under the exclusive control of the party making the allegation, it shall be a sufficient answer to allege that either or both such conditions exist and to demand proof of such alleged facts by the opposite party. In no event shall either party be required to inquire of the opposite party as to alleged facts the proof of which

is under the exclusive control of the opposite party, and, in no event, shall the party demanding proof of such alleged facts be required to state, specifically or otherwise, or to prove what reasonable investigation he has made to obtain the information of which he alleges he has no knowledge; but his affidavit alone shall be deemed sufficient to support his allegation of reasonable investigation."

It is the contention of defendants that said bond does not include the obligations of the contractor to pay for tools not incorporated in the work and that the claim for rental of machinery is not within the terms and provisions of the bond.

A surety company engaged in the business of selling surety bonds to insure highway contractors and to provide for payment of materials, men, etc., on highway construction, must be aware generally of the types and kind of machinery and materials necessary for the prosecution of this character of work. It must be aware that tractors, scrapers, bull-dozers, gasoline engines, air compressors, drills, and certain other tools and materials are used by a road construction contractor and that materials other than those which are incorporated in the work are required in this prosecution. The very terms and conditions of the bond as here executed would indicate that such knowledge was had by a surety company. The statement of claim avers that the materials mentioned in exhibit "C" were consumed in the prosecution of work. If that is so, they were used in the prosecution of work just as much as the sand, stone, and cement which became incorporated in the finished product.

These facts are not within the exclusive possession of plaintiff. The surety company cannot say that it has no knowledge of these facts, if upon reasonable investigation that knowledge could have been ascertained.

One cannot shut his eyes to knowledge which is easily and reasonably ascertained. The inference is that the professional surety has general knowledge of what is used

in the way of materials and machinery in the prosecution of this character of work.

A reasonable investigation, in fact, any investigation by the surety, would have brought forth the exact information from its principal—the contractor in this case. It cannot neglect its duty to make a reasonable investigation and then claim the protection given by the provisions of the Act of 1935. The expression "reasonable investigation" is not just a catch phrase used to prevent judgment. It must mean such investigation as an ordinary and prudent person would exercise under similar circumstances. It must be consistent with reason. It may well be under the acts that a person is not compelled in the affidavit of defense to set forth all the facts to justify what efforts he made to show that those efforts were reasonable. See Friedman v. Northeast Business Men's B. & L. Assn., 120 Pa. Superior Ct. 604. If, from the record itself, it appears that any investigation would have brought to its attention the necessary information, then it cannot be heard to say that its investigation was reasonable. If these conclusions are sound, and we believe they are, defendant cannot avail itself of the provisions of the amended Practice Act of 1935, supra, to escape judgment.

In the case of Bank of America National Trust & Savings Assn. v. Sunseri et al., 311 Pa. 114, section 8 of the Practice Act, supra, as amended by the Act of June 12, 1931, P. L. 557, was reviewed as follows:

" 'Section 8. It shall not be sufficient for a defendant in his affidavit of defense to deny generally the allegations of the statement of claim, or for a plaintiff in his reply to deny generally the allegation of a set-off, counterclaim or new matter; but each party shall answer specifically each allegation of fact of which he does not admit the truth, except as provided in sections seven and thirteen: Provided, however, That if either the defendant or the plaintiff has no knowledge, and after reasonable investigation is unable to ascertain, whether or not the

facts alleged by the opposite party are true, or if means of proof of the facts alleged are under the exclusive control of the party making the allegation, it shall be a sufficient answer to allege that either or both such conditions exist and to demand proof of such alleged facts by the opposite party, but in no event shall either party be required to allege or prove that he has inquired of the opposite party as to, or investigated, alleged facts, the proof of which is under the exclusive control of the opposite party.' " Mr. Justice Simpson on pages 117-18 said:

"Turning to the affidavit of defense in the present case, we find that, in section after section, it makes identical answers to the corresponding sections of the statement as follows: 'In answer to paragraph . . . of the statement of claim, defendants aver that they have no knowledge of the facts set forth therein and that after reasonable investigation they are unable to ascertain whether or not the facts alleged therein are true, and aver that the proof of the facts alleged therein are under the exclusive control of the plaintiff, and, therefore, demand proof of the same.' Defendants' averment that they made a 'reasonable investigation' as to the facts, is of course unavailing, being only a matter of opinion. If they did make an investigation regarding those facts, they should have averred exactly what they did, and the court would have decided whether or not it was reasonable.

"Nor are defendants any happier in their averments that the facts set forth in the several paragraphs of the statement of claim 'are under the exclusive control' of plaintiffs. Apparently defendants think that because they made averments in the exact language of the statute, the court is obliged to accept their statements as verity, although the record itself shows they are untrue. This is an erroneous conclusion. The statute must have a reasonable construction, and it is not reasonable to suppose that the legislature intended to require the courts to accept as true, that which the record shows to be false."

In James Talcott, Inc., v. Levy et al., 123 Pa. Superior Ct. 94, the amendment of 1931, supra, to the Practice Act was also considered. Cunningham, J., said (p. 102) :

"If the statement that 'the facts are all within the possession of the plaintiff' is meant to be the equivalent of an allegation that 'means of proof of the facts alleged are under the exclusive control' of the plaintiff (an alternative form of denial), even so it is not sufficient. Appellant cannot claim the protection of such a form of denial where upon the face of the pleadings it cannot be the truth."

In Goodbody et al. v. Margiotti, 323 Pa. 529, Mr. Justice Stern on page 539 said:

"The affidavit of defense, in answer to the paragraph of the statement of claim setting forth these purchases and sales, alleged that 'Defendant further says that he has endeavored to ascertain whether or not such purchases and sales were actually made, but that it is impossible for him to obtain such information or verify such statements, and therefore, he denies the same.' This was not a sufficient denial to make it obligatory upon plaintiffs to offer proof of the fact. The Act of June 12, 1931, P. L. 557, requires defendants to make a *reasonable* investigation and this must be alleged; nor does the amendatory Act of July 12, 1935, P. L. 666, make any change in this particular respect."

This opinion seems to indicate that defendant must in fact have made a reasonable investigation. An affidavit of defense cannot be more defective if it states facts showing what investigation it has made without the allegation that it was reasonable, than an affidavit which merely alleges that it made a reasonable investigation when the record itself would indicate clearly that defendant could have made none at all. General or indefinite denials in an affidavit of defense are insufficient under the Practice Act of 1915 and its amendments. They must be clear and specific. The amendments of 1931 and 1935 were not intended to provide methods whereby defendant could escape filing of a specific denial. Where he found all the

facts within the possession of plaintiff, of course his ability to file a proper denial would be seriously hampered or even prevented; or where, upon reasonable investigation, he could not get the necessary facts then it is common sense that he could not file a specific denial. However, here where a surety could get the facts from his fellow defendant—the contractor—how can he be properly allowed to say that, after reasonable investigation, he is unable to ascertain, etc.?

In the case of Pennsylvania R. R. Co. v. Rubin et al., 130 Pa. Superior Ct. 578, 582, Baldrige, J., said:

"General or indefinite denials in an affidavit of defense are insufficient, under the Pennsylvania Practice Act of May 14, 1915, P. L. 483 §8, and its amendments of June 12, 1931, P. L. 557, §1, and July 12, 1935, P. L. 666, §1 (12 PS §390) : *Plummer et al. v. Wilson*, 322 Pa. 118, 125, 185 A. 311. To be effective they must be clear and specific: *Jones et al. v. Dubuque F. & M. Ins. Co.*, 317 Pa. 144, 176 A. 208; *Friedman v. B. & L. Assn.*, 120 Pa. Superior Ct. 604, 182 A. 792."

In Broderick, etc., v. Allis, 26 D. & C. 60, Uttley, P. J., of Mifflin County, making reference to the Practice Act of 1935, said on page 65:

"In the Act of June 12, 1931, P. L. 557, amending section 8 of the Practice Act, as in the Act of July 12, 1935, P. L. 666, further amending the same, it is provided that if either party has no knowledge and the means of proof of the facts alleged are under the exclusive control of the party making the allegation it shall be sufficient so to allege and to demand proof of such alleged facts from the opposite party. Notwithstanding this provision of the Act of 1931, Justice Simpson, in the Sunseri case, ruled that where, from the nature of the case, the facts alleged could not have been under the exclusive control of the opposite party, such allegation will not be sufficient, and . . . .

"This portion of the decision was in no way affected by the Act of 1935. It is true the language above quoted was used in connection with facts alleged to be under the exclusive control of the plaintiff, but the same reasoning is applicable to the allegation of reasonable investigation by the defendant."

In the case of Franklin Paint Co. v. Sweigard, 27 D. & C. 704, Stewart, P. J., of Northampton County, on page 707 said:

" 'It is not sufficient under the Act of 1931, supra, for a defendant to aver simply that he has made a "reasonable investigation" to ascertain whether or not the facts alleged in the statement of claim are true. He must aver exactly what he did, in order that the court may determine whether or not his alleged investigation was reasonable.

" 'If it is clear averments, in an affidavit of defense that the means of proof of particular facts alleged in the statement of claim to be under the exclusive control of plaintiff, cannot be true, the court will refuse to give force or effect to those averments. The Act of 1931, supra, does not require otherwise.

" 'If, upon consideration of an affidavit of defense in its entirety, it remains doubtful whether or not particular facts, alleged in the statement of claim to be under the exclusive control of plaintiff, are in fact so, the affidavit must set forth sufficient facts to show that these allegations may be true.'

"The opinion of Mr. Justice Simpson should be studied because it shows conclusively that a mere averment that defendant made reasonable investigation is only a matter of opinion."

In Gossett v. Dubuque Fire & Marine Ins. Co., 35 D. & C. 443, Sheely, P. J., of Dauphin County, said on page 447:

"It is clear that the amendment of 1935 was not meant to alter the ruling of the Supreme Court in the Sunseri case that an averment that the means of proof of an al-

legation are under the exclusive control of the opposite party is insufficient where the record shows that that statement is untrue, or where, from the nature of the case, the statement could not be true. All that was intended and was accomplished by the amendment of 1935 was to relieve the pleader from setting forth the nature of the investigation made by him."

In Nieman v. Soltis, 24 Fed. Supp. 1014 (D. C. E. D. Pa., 1938), Kirkpatrick, J., making reference to Bank of America, etc., v. Sunseri et al., supra, on pages 1016-17, said:

"The Court held that to bring himself within the terms of this privilege the defendant must particularize and aver exactly what he did, so that the Court could determine whether the investigation was reasonable. Otherwise it was only a matter of opinion. This was the ruling which was met by the amendment of 1935, 12 P. S. Pa. §390. Its effect is merely to relieve the defendant of the necessity of particularizing, as a matter of pleading, the steps which he took in the course of his reasonable investigation.

"[5] The Sunseri decision, however, covered other points which the Amendment of 1935 did not touch. The Court dealt with certain other denials of the affidavit of defense in that case, made under the other branch of the Act of 1931, to the effect that the means of proof of the facts alleged were under the exclusive control of the plaintiff and said, in effect, that where such statements were obviously false they would not be sufficient to prevent judgment. This ruling was not based upon any failure to comply sufficiently with the requirements of the statute but involved a much broader principle, namely, that no court will permit its process to be trifled with and its intelligence affronted by the offer of pleadings which any reasoning person knows can not possibly be true. This general principle applies just as well to the want of knowledge and reasonable investigation branch as to the exclusive control and means of proof branch of the statute,

and the fact that the statute has been fully complied with does not affect the situation.

"It is still the law and is unaffected by the Amendment of 1935. Broderick, Supt. etc. v. Allis, 26 Pa. Dist. & Co. R. 60, 65."

The terms of this surety bond speak for themselves. Defendant being a paid surety company, the terms of the bond must be construed strictly against defendant: Shaw v. New Amsterdam Casualty Co., 310 Pa. 213.

There is no statute in Pennsylvania making any provision for contracts of the Pennsylvania Turnpike Commission. Therefore, we must depend upon the terms of the bond itself for the provisions protecting subcontractors and materialmen performing services or furnishing materials on the work. The bond is for the protection of all persons who have performed labor, rendered services, or furnished materials or machinery in the prosecution of the work and it gives those persons a direct right of action against the principal and surety on the bond.

In clause D of said bond is the expression "any person, firm or corporation who has furnished material or machinery to be used on, with or incorporated in the work or prosecution thereof", etc.

The reasonable interpretation of these clauses must mean not only the materials incorporated in the work but and/or those materials and machinery to be used on the work or in the prosecution of the work.

By the same construction, the materials used on the work as part of construction of the work, or machinery rented and used on the work or in the prosecution thereof is reasonable and well within the provisions of the bond: Armstrong v. Standard Ice Co., 129 Pa. Superior Ct. 207; Oleon v. Rosenbloom & Co., 247 Pa. 250.

The allegation of the statement of claim is that the materials set forth in the exhibits attached thereto were necessary for the work; were intended to be used and were used exclusively on it and were consumed in the prosecution of the work. There is no specific denial of

this averment and, since that averment is exactly within the language of this particular bond, we believe that the affidavit of defense is insufficient.

There are a number of cases in this and other jurisdictions where the expression in the act of assembly or in a provision of the bond has to do with the "labor and materials furnished in or about the construction." Most jurisdictions have held that those materials under that provision in a bond must become incorporated in the finished product in order that materialmen may have a lien or a cause of action against the surety. That expression in its restricted sense expresses to a reasonable degree the intention of the parties to be bound only for those materials which in fact become part of the finished product: Gordon Hardware Co. v. San Francisco, etc., R. R. Co. (Cal. 1889), 22 Pac. 406; James v. Greenville Lumber Co., 122 N. C. 157, 29 S. E. 358; Central Trust Co. v. Texas & St. Louis Ry. Co., 23 Fed. 703; Meek v. Parker, 63 Ark. 367; Allen v. Elwert, 29 Ore. 428, 44 Pac. 823; Meyer v. Pennsylvania Slate Co. et al., 71 Pa. 293.

In the case of Independent Bridge Co., for use, v. Aetna Casualty & Surety Co., 316 Pa. 266, the bond contained the provisions "for any labor or materials furnished in or about the construction of said contract", etc.

Mr. Justice Maxey held that materials furnished in and about construction of said work meant those things which become incorporated in the finished product. Referring to Commonwealth, to use, v. Union Indemnity Co., 299 Pa. 143, Commonwealth, to use, v. Aetna Casualty & Surety Co., 101 Pa. Superior Ct. 314, Commonwealth, to use, v. Empire State Surety Co. (No. 1), 50 Pa. Superior Ct. 404, and Commonwealth, to use, v. Aetna Casualty & Surety Co., 309 Pa. 263, Mr. Justice Maxey stated on page 270:

"In all these cases, though the provisions of the bond were as definite and comprehensive as in the bond now being interpreted, it was held that such provisions gave

a right of action only to those who furnished to the principal on the bond material *actually incorporated in the completed job."*

Mr. Justice Maxey also made reference to the case of Philadelphia, to use, v. Jackson & Co., Inc., et al., 280 Pa. 319, and Concrete Products Co. v. United States Fidelity & Guaranty Co., 310 Pa. 158, as exceptions to the general rule and because of the additional provisions contained in the bond.

It will be found in the various cases aforesaid to which reference has been made, that the causes of action are based upon the provisions of an act of assembly or a specific phrase contained in the bond itself.

In the case of Hinchman v. Graham, 2 S. & R. 170, where the Act of March 17, 1806, 4 Sm. L. 300, provided for a lien for material men who furnished materials for or in the erection and construction of such building, Tilghman, C. J., where the facts showed that the lumber was delivered to a shop and was to be held to be worked on and made ready for the building, said on page 172:

"I was once inclined to think, that the lien might be restrained to the materials *actually used in the building.* But on reflection, I find that such a construction is not warranted by the words of the law, and would operate unjustly on those who furnish the materials; for how can they tell the exact quantity that the building will require, or what control have they over the purchaser after delivery? In the case of *Wallace* v. *Melchior,* in the District Court, 2 *Browne* 104, the lumber merchant held his lien, although the lumber *was not used* in the building. That, I think, was right. The lumber, there, indeed, was delivered *at or near the house;* but I can hardly suppose that the court meant to make that circumstance a *sine qua non.* If they did, I differ from them. This act of assembly, though intended for a very good purpose, may be so abused, as to defeat the object it was meant to accomplish. The amount of liens may be so great as to produce a deficiency in the security, and then the mechanics and

merchants may be in a worse condition than if the law had not been made; because, they now trust to the house, whereas, had there been no such law, they might have insisted on security of another kind. And besides, the title is so incumbered, that very serious difficulties occur in making sale of a newly finished house. But this must not induce the Court to attempt any alteration in the law. It is for others to legislate; for us to construe. I am of opinion, that the account of *C.* and *J. Remington* should be allowed as a lien, although the lumber was not delivered *at or near* the house, or *used in the building* of the house."

In the case of Rapauno Chemical Co. v. Greenfield et al., 59 Mo. App. 6, it was held that "materials as furnished" in the construction of a railroad were not confined to those incorporated in the construction and may include materials necessary for its construction and used or consumed in this building, such as giant powder.

In Poland, Trustee, v. Lamcille Valley R. R. Co. et al., 52 Vt. 144, a statute giving priority to claims for materials furnished for the purpose of keeping a railroad in repair or running was held to include materials consumed by it in its operation such as wood and coal. The same expression is used in the case of James v. Greenville Lumber Co., supra, where materials furnished which were necessary to run the concern and keep it going were held to include coal furnished an electric light company. The case of Commonwealth, to use, v. Empire State Surety Co. (No. 1), 50 Pa. Superior Ct. 404, relied upon by this defendant, comes under the provision of the Act of May 1, 1905, P. L. 318, and the bond of surety as there entered.

This bond contained the condition "material furnished in or about construction of said highway." This case followed all those other cases similar to it where the same expression had been used, and yet Hall, P. J., of Clinton County, had some difficulty, even in a case of that kind, in deciding the question. He said on pages 415-16:

"These decisions strike us personally as excellent illustrations of how fine a hair may be split. Just why a material man who furnishes the spike should be protected and the material man who furnishes a hammer, without whose agency it could not be driven, should be left out, when of course nobody ever had any such intention when the contract was drawn, is a matter quite beyond our poor powers of comprehension. Neither do we understand why there is a liability on the bond for days' time when work was actually performed on the structure and no liability on the bond for a day's time when work was not performed owing to some unavoidable circumstance which prevented it and for which time the contractor himself is liable. But it is the law, and this fact irrespective of all the other questions raised would defeat recovery in this case."

In our own jurisdiction, it will be found that our appellate courts have decided these cases entirely upon the conditions and provisions of the bond. They have adopted the theory contained in the case of Hinchman v. Graham, supra. In the case of Philadelphia, to use, v. Jackson & Co., Inc., et al., 280 Pa. 319, the provisions of that bond were for materials furnished or supplied upon or about said buildings. Mr. Justice von Moschzisker on page 324 said:

"Under a bond like the one before us, it is sufficient if the materials are of a character contemplated by the original contract, were furnished in good faith for the purpose of incorporation into the work covered by that contract, and were suitable for the object in view: Red Wing Sewer Pipe Co. v. Donnelly, 102 Minn. 192, 113 N. W. 1; Bell v. Kirkland, 102 Minn. 213, 113 N. W. 271; Donnelly on the Law of Public Contracts, p. 470; Dillon on Municipal Corporations, section 830, note 4. . . .

"The conclusion just stated does not offend the well-established doctrine that 'the words "material furnished" for any structure, work or improvement, in contracts of this kind, apply only to such materials as enter into and

become component parts of the structure, work or improvements contemplated' (Com. v. Nat. Surety Co., 253 Pa. 5, 13, 14; Phila. v. Malone, 214 Pa. 90, 97; Com. v. Empire State Surety Co., 50 Pa. Superior Ct. 404) ; for the decisions to that effect relate to the character of materials for the cost of which the surety may be held liable, the test being whether the materials in controversy were designed to become a component part of the finished work, or were merely intended as aids or appliances which the contractor would naturally be expected to furnish and which, if they remain upon the completion of his task, he would be expected to take away with him. In other words, the point of the decisions in question is not to be found in the degree of physical incorporation which is essential to a recovery for materials admittedly within the terms of the bond, but rather in the character of the materials and the purpose for which they were furnished; this is clearly apparent from the facts and language of the cases under discussion."

In the case of Concrete Products Co. v. United States Fidelity & Guaranty Co., 310 Pa. 158, practically the same provision was contained in the bond, to wit, for materials in "the carrying forward, performing or completing of said contract." It was held in that case that the provisions of this bond were for the benefit of such materialmen, giving them a status of a direct promisee and a party to the bond so that the averments contained in the statement of claim in that case were held proper and sufficient.

Here there is no statute in Pennsylvania providing for contracts under the Pennsylvania Turnpike Commission or giving the materialmen a right to sue on a bond, but it has been long held that such a statute is not necessary. See Concrete Products Co. v. United States Fidelity & Guaranty Co., supra.

In the case of Pittsburgh, to use, v. Commercial Cas. Ins. Co., 106 Pa. Superior Ct. 254, Cunningham, J., said (p. 258) :

"Appellant is correct in stating that such a bond need not necessarily be authorized by statute, but if a right of action is not so given, the sub-contractors must be able to find their right to sue in the language of the instrument itself."

Under the terms of the bond before us, the provision is for those who perform labor, render services, and furnish materials in the prosecution of the work provided for in said contract, and later it provides that "all persons who performed labor, render service or furnish materials or machinery as aforesaid" (which must mean in the prosecution of the work) "shall have a direct right of action against the principal and surety on this bond."

Then in paragraph D of the bond and explaining the term "person", it is said to mean "any person, firm or corporation who has furnished materials or machinery to be used on or incorporated in the work, or prosecution thereof in addition to the material incorporated in the work." In other words, the provisions of this bond are not nearly as restrictive as provisions of all earlier cases to which reference has been made.

Webster defines prosecute: "To follow; pursue with a view to reach; execute or accomplish; to carry on; to continue; to follow up; to go on or to proceed with."

The materials for which plaintiff asked payment from the surety were consumed in the progress or prosecution of this work. The same is true of the machinery. It was used in the prosecution of this work. The matter therefore is thus within the provisions of the bond. The claim made by plaintiff in the statement of claim for the sum of $2,204.78 is specifically denied by the affidavit of defense and thus does not come within the purview of this opinion.

As to the balance of the claim in the sum of $10,202.93, the affidavit of defense is insufficient and judgment in this sum is granted to plaintiff.

## Order

And now, to wit, February 24, 1940, the rule for judgment for want of a sufficient affidavit of defense is made absolute.